United States Bankruptcy Court
Southern District of Texas

**ENTERED**

September 14, 2021

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| RAMON BLANCO | § | CASE NO: 20-10078 |
| and | § | |
| MARIA P BLANCO, | § | CHAPTER 13 |
|     Debtors. | § | |
| _____ | § | |
| RAMON BLANCO | § | |
| and | § | |
| MARIA P BLANCO, | § | |
|     Plaintiffs, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 20-1005 |
| | § | |
| BAYVIEW LOAN SERVICING LLC, | § | |
|     Defendant. | § | |

## <u>MEMORANDUM OPINION</u>

Plaintiffs Ramon and Maria P. Blanco filed an adversary proceeding, incorporating their previously filed claim objection, and asserting core bankruptcy claims such as lien avoidance and violations of Rule 3002.1, the automatic stay, and the discharge injunction, to name a few. The target of the complaint is Defendant Community Loan Servicing, LLC f/k/a Bayview Loan Servicing, LLC who responded with a motion seeking partial dismissal of Plaintiffs' complaint for failure to state a claim. Not to be outdone, Plaintiffs filed their own motion seeking dismissal of Defendant's counterclaims and for entry of a judgment on the pleadings.

On September 7, 2021, the Court held a hearing on the competing motions and for the reasons set forth herein, Ramon and Maria P. Blanco's Counts I and II are dismissed with prejudice, their motion for judgment on the pleadings is denied and their request for leave to amend their complaint is denied. Community Loan Servicing, LLC f/k/a Bayview Loan Servicing, LLC's Count II is dismissed, and their request for leave to amend its answer and counterclaims is denied.

# I. BACKGROUND

## A. Procedural History

In Ramon and Maria P. Blanco's ("*Plaintiffs*") underlying bankruptcy case, Community Loan Servicing, LLC f/k/a Bayview Loan Servicing, LLC ("*Defendant*") filed a proof of claim. As discussed below, that proof of claim has been amended twice. Plaintiffs filed an objection to Defendant's proof of claim, later incorporating that objection into an original complaint, and asserting several claims ("*Complaint*").[1]

Plaintiffs' Complaint sets forth nine causes of action: (i) Defendant's lien is void under Texas law; (ii) avoidance of loan and lien; (iii) violations of Federal Rule of Bankruptcy Procedure 3002.1; (iv) objection to Defendant's proof of claim; (v) violation of the plan and the order confirming the plan; (vi) willful violation of the automatic stay pursuant to 11 U.S.C. § 362(a)(3); (vii) violation of the discharge injunction pursuant to 11 U.S.C. § 524(i); (viii) contempt, and (ix) breach of contract Plaintiffs also seek injunctive relief and request actual, statutory, and punitive damages, plus attorney's fees and sanctions.[2] Plaintiffs' claims against Defendant arise from a prior bankruptcy case, 11-70475, that was discharged by this Court in 2018 ("*2011 Case*") and the instant bankruptcy proceeding.

Defendant filed an answer to Plaintiffs' Complaint and alleged two counterclaims for breach of contract and declaratory judgment.[3] Defendant then filed, and later amended, a partial motion to dismiss Plaintiffs' Complaint for failure to state a claim ("*Motion to Dismiss*").[4] Plaintiffs filed their competing "Motion to Dismiss Defendant's Counterclaims for Failure to State a Claim and Motion for Judgment on the Pleadings" ("*Plaintiffs' Motion*").[5] Each party timely filed

---

[1] ECF No. 21.
[2] *Id.*
[3] ECF No. 23.
[4] ECF No. 34.
[5] ECF No. 36.

the appropriate responses and replies to the cross-motions to dismiss.[6]  On September 7, 2021, the

Court held a hearing on the Motions.

**B.  Factual Background**

### 1.  The $68,000 Note and accompanying Deed of Trust

The factual background in this case spans two decades and is highly contested.  In this

section, the Court details undisputed facts, unless otherwise noted.

Plaintiffs own the real property at issue in this case, 4015 E. Expressway 83, Weslaco,

Texas 78596 having a legal description of: Lot Seven (7), Dellinger Subdivision, an Addition to

the City of Mercedes, Hidalgo County, Texas, as per map or plat thereof recorded in Volume 22,

Page 39, Map Records, Hidalgo County, Texas ("*Property*").[7]  In 2001, Plaintiffs took out a loan

on the Property from InterBay Funding, LLC ("*InterBay*"), executing a note for $68,000 ("*Note*")

and a corresponding deed of trust ("*Deed of Trust*").[8]  Through a series of assignments that Plain-

tiffs allege were defective, InterBay's interest in the Note and Deed of Trust was purportedly

transferred to Defendant.[9]

On January 25, 2010, Plaintiff Ramon Blanco and Defendant executed a Modification

Agreement of the Note and Deed of Trust ("*Modification Agreement*").  The Modification Agree-

ment restructured the Note and raised it to an unpaid principal balance due of $115,340.64 and

provided for monthly payments of $1,197.40.[10]

### 2.  Plaintiffs' 2011 bankruptcy case

On August 1, 2011, Plaintiffs filed a bankruptcy petition, initiating the 2011 Case.  Cindy

---

[6] ECF No. 37 (Plaintiffs' response to Defendant's Motion to Dismiss); ECF No. 38 (Defendant's Reply); ECF No. 40 (Defendant's response to Plaintiffs' Motion to Dismiss); ECF No. 42 (Plaintiffs' Reply).
[7] ECF No. 1 at 6, ¶ 12.
[8] ECF No. 21 at 7, ¶ 21; ECF No. 23 at 4, ¶ 21.
[9] ECF No. 21 at 8–10, ¶¶ 29–37, 40–43.
[10] ECF No. 21 at 10, ¶ 38; ECF No. 23 at 5, ¶ 38.

Boudloche was the chapter 13 trustee ("*Trustee*").[11]  Defendant filed a proof of claim ("*2011 POC*") in the 2011 Case for $124,157.54 and listed $16,052.69 in arrears and an on-going mort- gage payment of $1,197.40.[12]  Plaintiffs' reorganization plan proposed to pay the $1,197.00 through the Trustee.  The plan also proposed to pay the arrears with 5.252% interest.[13]  That plan was confirmed.[14]

On November 30, 2011, Defendant filed a Notice of Mortgage Payment Adjustment ("*NPC*"), notifying all parties that the monthly payment would increase to $1,251.57 effective January 1, 2012.  Plaintiffs did not object to the NPC.[15]  On December 21, 2011, Defendant filed a Motion to Lift Stay, wherein it represented that the on-going monthly mortgage payments were $1,197.40.[16]  On January 27, 2012, this Court entered an Agreed Order resolving the Lift Stay motion.[17]  The Agreed Order stated that Plaintiffs were to continue paying $1,197.40, not the amount reflected in the November 30, 2011 NPC.[18]  On December 29, 2011, the Trustee filed a Trustee's Report,[19] notifying Defendant that:

> According to the Trustee's records, the current monthly mortgage payment is $1,197.40.  Written notice of changes in the monthly payment must be provided to the Trustee, the Debtor and Debtor's counsel 21 days prior to the effective date of the mortgage payment change, pursuant to Bankruptcy Rule 3002.1(b). [20]

Four years later, Plaintiffs filed an Amended Motion to Modify their chapter 13 plan ("*2011 Plan*") to allow for the claim of a non-related creditor; however, therein, Plaintiffs proposed to continue paying Defendant on its claim the amount of $1,197.40 until the end of the plan.

---

[11] ECF No. 21 at 11-12, ¶ 52; ECF No. 23 at 6, ¶ 52.
[12] ECF No. 21 at 12, ¶ 54; ECF No. 23 at 7, ¶ 54.
[13] ECF No. 21 at 12, ¶ 53; ECF No. 23 at 6, ¶ 53.
[14] 11-70475, ECF No. 67.
[15] ECF No. 21 at 12 ¶ 56; ECF No. 23 at 7, ¶ 56.
[16] ECF No. 21 at 12–13, ¶ 57; ECF No. 23 at 7, ¶ 57.
[17] 11-70475, ECF No. 91.
[18] ECF No. 21 at 12-13, ¶ 57; ECF No. 23 at 7, ¶ 57.
[19] ECF No. 21 at 13, ¶ 58; ECF No. 23 at 7, ¶ 58.
[20] ECF No. 21 at 13, ¶ 59; ECF No. 23 at 7, ¶ 59.

Defendant did not object to the Modification.[21]  The Court granted Plaintiffs' Amended Motion to Modify.  The Trustee made all the mortgage payments to Defendant in the amount of $1,197.40, totaling $71,898.17 over the sixty months of the 2011 Plan.  The Trustee also paid all the pre-petition arrearage.[22]

On September 29, 2016, the Trustee filed a Motion to Deem the Mortgage Current under Federal Rule of Bankruptcy Procedure 3002.1(f).  In it, the Trustee stated that the monthly mortgage payment in her books and records as of that date was $1,197.40.  The Trustee also stated that the "Next Payment Due Date" was September 2016.[23]  On October 5, 2016, Defendant filed a Form 4100R Response to Notice of Final Cure Payment under Federal Rule of Bankruptcy Procedure 3002.1(g).[24]  Therein, Defendant agreed with the Trustee that: (1) Plaintiffs cured the pre-petition default on Defendant's claim; (2) "[Plaintiffs] are current with all post-petition payments consistent with §1322(b)(5) of the Bankruptcy Code, including all fees, charges, expenses, escrow, and costs; and (3) the next payment due date was September 1, 2016.  Defendant did not object to the monthly payment amount of $1,197.40.[25]

On October 11, 2016, this Court signed an Order Deeming Mortgage Current and Directing Debtors to Resume Payments ("*Deem Current Order*").  In that order, this Court found that all payments to Defendant under the confirmed plan were completed and that "(i) the claims of the above-listed creditor(s) (Community) are deemed current; (ii) all escrow deficiencies, if any, are deemed cured; and (iii) all legal fees, inspection fees and other charges imposed by the creditor, if any, are deemed satisfied in full as of the next payment due date set forth below and that the

---

[21] ECF No. 21 at 13, ¶ 60; ECF No. 23 at 7, ¶ 60.
[22] ECF No. 21 at 13, ¶ 61; ECF No. 23 at 7, ¶ 61.
[23] ECF No. 21 at 14, ¶ 62; ECF No. 23 at 7, ¶ 62.
[24] 11-70475, ECF No. 206.
[25] ECF No. 21 at 14, ¶ 63; ECF No. 23 at 7, ¶ 63.

creditor shall be solely responsible for any shortfall or failure to respond to the Trustee's notice and motion."[26]  Further, the Order directed Plaintiffs pay $1,197.40 directly to Defendant beginning September 2016.[27]

On October 20, 2016, the Trustee filed a Notice of Plan Completion.[28]  Despite that Notice and this Court's Deem Current Order, Defendant filed an NPC under Official Form 410S1, after the 2011 Plan had been completed and was no longer in effect.[29]  The NPC indicated that the mortgage payment would increase to $2,012.00 effective March 1, 2017 based on an alleged increase in the escrow payment from $627.69 to $1,185.69.  Plaintiffs did not object to the NPC, allegedly because the 2011 Plan had been completed and was no longer in effect.[30]

On May 31, 2017, the Trustee withdrew her Notice of Plan Completion.[31]  Thereafter, the Trustee filed an updated Notice, stating that all "plan payments were properly adjusted to reflect any change in mortgage payments after confirmation or the last approved modification."  Defendant did not object to the Trustee's updated Notice.[32]  On September 13, 2018, this Court granted Plaintiffs a discharge and entered a Final Decree.[33]

### 3.  Defendant's attempt to foreclose

Plaintiffs admit that they stopped making payments to Defendant in November 2018, allegedly because they grew frustrated with Defendant's post-discharge activities, recounted throughout this Memorandum Opinion.[34]  Defendant notified Plaintiffs of its intent to foreclose on

---

[26] 11-70475, ECF No. 207.
[27] ECF No. 21 at 14, ¶ 64; ECF No. 23 at 7, ¶ 64.
[28] ECF No. 21 at 14, ¶ 65; ECF No. 23 at 7, ¶ 65.
[29] ECF No. 21 at 15, ¶ 66; ECF No. 23 at 7, ¶ 66.
[30] ECF No. 21 at 15, ¶ 67; ECF No. 23 at 7, ¶ 67.
[31] ECF No. 21 at 15, ¶ 68; ECF No. 23 at 7, ¶ 68.
[32] ECF No. 21 at 15, ¶ 69; ECF No. 23 at 7, ¶ 69.
[33] ECF No. 21 at 15, ¶ 70; ECF No. 23 at 8, ¶ 70.
[34] ECF No. 21 at 15–16, ¶ 71.

the Property and scheduled a foreclosure sale for August 6, 2019.[35]  Plaintiffs filed a state court

action in Hidalgo County on July 30, 2019 to stop the foreclosure.[36]  Defendant removed the state

court proceeding to federal court and the Plaintiffs voluntarily dismissed the case.[37]

### 4. Plaintiffs' instant bankruptcy case

On February 27, 2020, Plaintiffs filed their initial petition and schedules under chapter 13

of title 11 of the United States Code, initiating the instant bankruptcy case.[38]  Plaintiffs scheduled

Defendant as having a claim secured by a first lien mortgage on the Property.[39]  Defendant filed a

proof of claim and has twice amended that claim.  The amended proof of claim currently before

the Court is Claim No. 9-3.[40]  Claim No. 9-3 is comprised of the following:

    a.  Monthly mortgage payment in the amount of $1,453.39;
    b.  Outstanding principal of $103,483.49;
    c.  Default interest of $12,142.60;
    d.  Fees and costs due of $6,865.97;
    e.  Escrow deficiency funds of $3,212.69; and
    f.  Less total funds on hand of $355.37
    g.  Total debt $132,678.08

The $33,607.60 arrearage component of the claim is comprised of the following:

    h.  Principal and interest due of $21,375.97;
    i.  Pre-petition fees due of $6,865.97;
    j.  Escrow deficiency for funds advanced of $3,212.69;
    k.  Projected Escrow shortage of $2,508.34; and
    l.  Less total funds on hand of $355.37.[41]

---

[35] ECF No. 21 at 17, ¶ 78; ECF No. 23 at 8, ¶ 78.
[36] ECF No. 21 at 17, ¶ 79; ECF No. 23 at 8, ¶ 79.
[37] ECF No. 21 at 17, ¶ 79; ECF No. 23 at 8, ¶ 79.
[38] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C. "Bankr. ECF" refers docket entries made in the Debtors' bankruptcy case, No. 20-10078. Entries made in Plaintiffs' 2011 Case take the format 11-70475, ECF No. __.
[39] ECF No. 21 at 10, ¶ 45; ECF No. 23 at 6, ¶ 45.
[40] ECF No. 21 at 11, ¶ 46; ECF No. 23 at 6, ¶ 46.
[41] ECF No. 21 at 11, ¶ 51; ECF No. 23 at 6, ¶ 51.

## II.  JURISDICTION AND VENUE

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[42]  This court determines that pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K), and (L), this adversary proceeding contains core matters because the complaint primarily asserts claims and seeks relief under the United States Bankruptcy Code, including contempt and sanctions for violation of their chapter 13 Plan, the confirmation order, and violations of Federal Rule of Bankruptcy Procedure 3002.1, and 11 U.S.C. § 524(i).[43]

Furthermore, this Court may only hear a case in which venue is proper.[44]  Pursuant to 28 U.S.C. § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Plaintiffs' chapter 13 case is presently pending in this Court and therefore, venue of this adversary proceeding is proper.

## III.  CONSTITUTIONAL AUTHORITY

This Court must evaluate whether it has constitutional authority to enter a final judgment in this case.  In *Stern,* which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."[45]  However, *Stern* is inapplicable to the instant case.  *Stern* concerned final orders entered by the bankruptcy court and here, the Court need only enter an

---

[42] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[43] *See* 28 U.S.C. § 157(b).
[44] 28 U.S.C. § 1408.
[45] *Stern v. Marshall*, 564 U.S. 462, 503 (2011).

interlocutory order because motions to dismiss pursuant to Federal Rule of Civil Procedure ("*FRCP*") 12(b)(6), like the instant motions filed by Defendant and Plaintiffs, are interlocutory. Entering an interlocutory order does not implicate "the constitutional limitations on the Court's authority to enter final judgments."[46]   Therefore, this Court need not determine whether it has constitutional authority to enter a final judgment because an interlocutory order is all the instant case requires.[47]

## IV.  ANALYSIS

### A.  Defendant's Motion to Dismiss

Under FRCP 12(b)(6), this Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."[48]   However, motions to dismiss are disfavored and therefore, rarely granted.[49]   This Court reviews motions under FRCP 12(b)(6) by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs."[50]   Although this Court "will not strain to find inferences favorable to the plaintiff,"[51] the facts need only be sufficient "for an inference to be drawn that the elements of the claim exist."[52]

To defeat a motion to dismiss pursuant to FRCP 12(b)(6), a plaintiff must meet FRCP 8(a)(2)'s pleading requirements.   FRCP 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."[53]   In *Ashcroft v. Iqbal*, the

---

[46] *West v. WRG Energy Partners LLC (In re Noram Res., Inc.)*, 2011 Bankr. LEXIS 5183, at *3 (Bankr. S.D. Tex. Dec. 30, 2011).

[47] *See Shelton v. Aguirre & Patterson, Inc. (In re Shelton)*, 2014 Bankr. LEXIS 1722, at *11 (Bankr. S.D. Tex. Apr. 18, 2014) (explaining that a bankruptcy court may not dismiss a cause of action with prejudice because that would constitute adjudication on the merits and thus a final order dismissing the plaintiff's suit. However, the court continued, a court may issue an interlocutory order even where it does not have authority to enter a final order.)

[48] FED. R. CIV. P. 12(b)(6).

[49] *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

[50] *Stokes v. Gann*, 498 F. 3d 483, 484 (5th Cir. 2007) (per curiam).

[51] *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

[52] *Harris v. Fidelity Nat'l Info. Serv (In re Harris)*, 2008 Bankr. LEXIS 1072, at *11 (Bankr. S.D. Tex. Apr. 4, 2008) (citing *Walker v. South Cent. Bell Tel. Co*., 904 F2d 275, 277 (5th Cir. 1990)).

[53] FED. R. CIV. P. 8(a).

Supreme Court held that FRCP 8(a)(2) requires that "the well-pleaded facts . . . permit the court to infer more than the mere possibility of misconduct."[54] "Only a complaint that states a plausible claim for relief survives a motion to dismiss."[55] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[56] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[57]

In its Motion to Dismiss, Defendant alleges:

1. Plaintiffs' Counts I and II should be dismissed because Plaintiffs' challenges to the validity of the Note and Deed of Trust securing Defendant's lien:

   a. are barred by the doctrines of judicial estoppel and *res judicata* because of this Court's Orders and Plaintiffs' actions in their 2011 Case; and

   b. even if Count II is not barred by either doctrine, Plaintiffs lack standing to challenge the validity of the assignments of the Note and Deed of Trust to which they were not a party;

2. Plaintiffs' Count III should be dismissed because Federal Rule of Bankruptcy Procedure 3002.1 does not provide a basis for an independent cause of action in this case, and Plaintiffs have not alleged damages by virtue of the alleged violations in their previous bankruptcy proceeding; and

3. Plaintiffs' Counts V–VIII should be dismissed because Plaintiffs have not alleged any specific damages resulting from Defendant's alleged violation of any of this Court's Orders.[58]

The Court considers each in turn.

### 1. Plaintiffs' Counts I (void lien) and II (avoidance of loan and lien)

---

[54] 556 U.S. 662, 679, (2009) (quoting FED. R. CIV. P. 8(a)(2)).
[55] *Id*. (citing *Twombly*, 550 U.S. at 556 (2007)).
[56] *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).
[57] *Id*. (quoting *Twombly*, 550 U.S. at 556). *See also Lormand v. US Unwired, Inc*., 565 F.3d 228, 232 (5th Cir. 2009) (citations omitted) ("A complaint does not need detailed factual allegations but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true raise a right to relief above the speculative level.").
[58] ECF No. 34 at 5.

In Count I, Plaintiffs allege that Defendant's asserted lien is unenforceable against Plaintiffs' Property under Texas law, including but not limited to section 50 of the Texas Constitution, because the loan is a commercial loan secured by a lien on a homestead.[59]  Under Texas law, a homestead is protected against all debts except for purchase money and specified improvements. Article XVI, section 50 of the Texas Constitution provides, in pertinent part:

> The homestead of a family . . . is hereby protected from forced sale for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon . . . . No mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described in this section . . . . All pretended sales of the homestead involving any condition of defeasance shall be void.[60]

Plaintiffs' Complaint alleges that (i) they have resided at the Property since acquiring it in 1994 and they have never given up their intent to treat the property as their homestead; (ii) the original lender, InterBay, by and through its funding agent, Mr. Bocanegra, knew that the Plaintiffs resided on the Property at the time it extended the loan; (iii)  InterBay's own mortgage application states it is a residential application and not a commercial application; and (iv) Plaintiffs filed a Homestead Designation in Hidalgo County, Texas in 2014, designating the Property as their homestead.[61]

In Count II, Plaintiffs allege that Defendant's secured claim should be disallowed in its entirety under 11 U.S.C. §506 because Defendant (i) does not hold a valid lien on the Property under Texas law; and (ii) has no contractual standing to assert the claim because it is not the holder of the Note.  Plaintiffs allege that Defendant is not the holder of the lien because the three assignments purportedly transferring InterBay's interest in the Note and Deed of Trust to Defendant were defective for the reasons discussed below.

---

[59] ECF No. 21 at 19, ¶ 88.
[60] TEX. CONST. art. 16, §§ 50(a)(1)–(3), (c).
[61] ECF No. 21 at 19, ¶ 88.

### a.  Whether Plaintiffs have standing to challenge the validity of assignments of the Note and Deed of Trust

Defendant's third basis for dismissal of Plaintiffs' Count II challenges Plaintiffs' standing. Because standing is a threshold matter, the Court analyzes this issue first.[62]  Defendant insists that Plaintiffs lack standing to challenge the validity of the assignments of the Note and Deed of Trust because Plaintiffs were not parties to any of the assignments in question.[63]

Plaintiffs retort that they do have standing and distinguish the present case from *Crymes*,[64] a case cited by Defendant.  Plaintiffs argue that this case differs from *Crymes* in three important respects: (1) here, Defendant's proof of claim constitutes a complaint and Plaintiffs' objection constitutes an answer, unlike in *Crymes* where the plaintiff launched an offensive attack challenging the validity of the creditor's lien; (2) the assignments in *Crymes* were facially valid, but here the alleged "extensive deficiencies" are "facially obvious"; and (3) the secured creditor in *Crymes* did not file a proof of claim, preferring its lien to pass through bankruptcy under § 506(d)(2) whereas here, Defendant filed a proof of claim, attaching one of the deficient assignments, and Plaintiffs are within their rights to challenge that proof of claim and asserted lien.[65]

### i.  Plaintiffs' challenge to the assignments constitutes a defense to Defendant's Claim No. 9-3

Standing under Texas law "focuses on whether a party has a sufficient relationship with a lawsuit so as to have a justiciable interest in its outcome."[66]  If a party was personally aggrieved by an alleged wrong, then it has standing to sue.[67]  Conversely, if the party does not have a legal right belonging to it, then it does not have standing to sue.[68]  A mortgagor's standing to challenge

---

[62] ECF No. 34 at 17–18.
[63] ECF No. 34 at 18.
[64] 2018 Bankr. LEXIS 2479 (Bankr. N.D. Tex. Aug. 20, 2018).
[65] ECF No. 37 at 16–17.
[66] *Austin Nursing Ctr., Inc. v. Lovata*, 171 S.W.3d 845, 848 (Tex. 2005).
[67] *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996).
[68] *Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976).

assignments of a deed of trust lien that secures a debt to which the mortgagor was not a party is limited.[69]  Plaintiffs have not alleged that they are parties to the assignments.  Thus, if Plaintiffs' success on the merits would merely render the allegedly deficient assignments voidable, then Plaintiffs do not have standing to challenge those assignments.[70]  If Plaintiffs' success would render the assignments void, then Plaintiffs do have standing to challenge Defendant's efforts to enforce the lien based on the assignments.[71]

The basis of Plaintiffs' first and third arguments is that they have standing to challenge the assignments because they are merely defending against Defendant's Claim No. 9-3 by disputing its secured status under § 506.[72]  Plaintiffs cite *Continental Airlines* for the proposition that Defendant's proof of claim acts as an original complaint and Plaintiffs' objection is an answer to that complaint.[73]  There, the Fifth Circuit said, "[a]s we stated in *In re Simmons*, 765 F.2d 547 (5th Cir. 1985), the filing of a proof of claim is analogous to the filing of a complaint in a civil action, with the bankrupt's objection the same as the answer."[74]  In *Simmons*, the Fifth Circuit held that "[t]he objection to a claim initiates a contested matter unless the objection is joined with a counterclaim asking for the kind of relief specified in Bankruptcy Rule 7001."[75]

---

[69] *See, e.g.*, *Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 780–81 (5th Cir. 2015) ("Borrowers have limited standing to challenge their lenders' assignments of their promissory notes and DOTs.  In Texas an obligor cannot defend against an assignee's efforts to enforce the obligation on a ground that merely renders the assignment *voidable* at the election of the assignor."  But an obligor has standing to challenge an assignee's efforts to enforce the obligation on a ground that would render the assignment *void*.  Therefore, the [obligors] have standing to challenge the [assignee's] efforts to foreclose if the [obligor's] claim would render the assignment void rather than voidable.") (cleaned up).

[70] *Id.*

[71] *Id.*

[72] ECF No. 37 at 16.

[73] *Id.* (citing *In re Continental Airlines*, 928 F.2d 127, 129 (5th Cir. 1991)).

[74] *In re Continental Airlines*, 928 F.2d at 129.

[75] 765 F.2d at 552.

The relief specified in Rule 7001 includes proceedings to recover money, determine the validity of a lien, and obtain an injunction.[76]  Plaintiffs' Complaint seeks all three.[77]  As noted in *Express One*, an objection joined with a counterclaim to recover money becomes an adversary proceeding pursuant to Rule 3007.[78]  Rule 3007 states, "[a] party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding."[79]

Here, Plaintiffs filed an objection to Defendant's Claim No. 9-2, since amended to Claim No. 9-3, in the underlying bankruptcy case ("*Objection*").  In that Objection, Plaintiffs contested, inter alia, Defendant's secured status, arguing that Defendant does not hold a valid lien under Texas law, and sought disallowance of the claim under § 506.[80]  Plaintiffs orally requested that certain adversary proceeding rules be applied to their Objection.[81]  That request was granted.[82]  Thereafter, this Court entered a scheduling order, requiring Plaintiffs to file a complaint.[83]  Plaintiffs' Complaint reiterated their challenge to Defendant's secured status, but added several claims, including an additional challenge to the validity of Defendant's lien based on the Texas Constitution.[84]

Pursuant to *Continental Airlines*, the Objection constituted an answer to Defendant's Claim No. 9-3.[85]  Plaintiffs' Complaint incorporated the arguments made in their Objection and lodged

---

[76] FED. R. BANKR. P. 7001(1)–(2), (7). *See also id.* 3007(b) ("A party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding.").
[77] ECF No. 21 at 19–22 (validity of lien), 36–37 (injunctive relief and damages).
[78] *In re Express One Int'l*, 243 B.R. 290, 292 (Bankr. E.D. Tex. 1999).
[79] FED. R. BANKR. P. 3007(b).
[80] 20-10078, ECF No. 98.
[81] See 20-10078, November 12, 2020 Min. Entry; 20-1005, ECF No. 1.
[82] ECF No. 1.
[83] ECF No. 12.
[84] ECF No. 21.
[85] 928 F.2d at 129.

additional claims.[86]  Despite their inclusion in Plaintiffs' Complaint, Plaintiffs' objections to Defendant's Claim No. 9-3 substantively constitute an answer to Defendant's Claim No. 9-3.[87]  Because that portion of Plaintiffs' Complaint is a responsive pleading, Plaintiffs' challenge to the assignments is a defense to Defendant's Claim No. 9-3.  Nonetheless, for Plaintiffs to have standing, that defense must render the assignments void, not merely voidable.[88]

### ii.  Plaintiffs' challenge to the assignments of the Note and Deed of Trust would not render the assignments void

Plaintiffs argue that Defendant must prove "successive transfer of possession and indorsement establishing an unbroken chain of title" to enforce the Note as a holder.[89]  Plaintiffs also complain that Defendant is not the legal holder of the Deed of Trust lien because of the three allegedly defective assignments.  Specifically, Plaintiffs allege that: (1) the first assignment was not recorded and is defective because it does not list an assignee;[90] (2) the second assignment, from InterBay to Bayview, is defective because it is not an original document and is a clear manipulation of the first assignment, containing false representations as to the execution date of the assignment;[91] and (3) the third assignment is defective because it was signed by Defendant, not by the true owner of the Deed of Trust, InterBay Funding, LLC.[92]  Plaintiffs attach copies of all three

---

[86] *Compare* 20-10078, ECF No. 98, *with* ECF No. 21.  *See also* ECF No. 21 at 5 ("The Blancos have filed this complaint to object to Community's claim, both as a secured claim, because the liens are defective and in violation of Plaintiffs' homestead rights under Texas law, and as to the amount of the claim.").

[87] *See, e.g.*, *Continental Airlines*, 928 F.2d at 129; *In re Simmons*, 765 F.2d at 552 (citing *Nortex Trading Corp. v. Newfield*, 311 F.2d 163, 164 (2d Cir. 1962) ("The filing by Nortex of its proof of claim is analogous to the commencement of an action within the bankruptcy proceeding. The trustee's petition is in the nature of an answer incorporating an affirmative request for relief by way of surrender of the preference.")).

[88] *See Murphy v. HSBC Bank USA*, 2017 U.S. Dist LEXIS 11948, at *17 (S.D. Tex. Jan. 30, 2017) ("The law is settled that the obligors of a claim may defend the suit brought thereon on any ground which renders the assignment void, but may not defend on any ground which renders the assignment voidable only, because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure himself that he will not have to pay the same claim twice.") (quoting *Calderon v. Bank of America*, 941 F. Supp. 2d 753, 764 (W.D. Tex. 2013)).

[89] ECF No. 21 at 20–21 (citing *Miller v. Homecomings Fin., LLC*, 881 F. Supp. 2d 825, 827, 831–32 (S.D. Tex. 2012)).

[90] *Id.* at 9, ¶¶ 31–32.

[91] *Id.* ¶¶ 33–37.

[92] *Id.* at 10, ¶¶ 40–43.

assignments to their Complaint.[93]  As explained below, Plaintiffs' challenges to the assignments are flawed for several reasons.

### _The first assignment_

Plaintiffs' reference to their Exhibit D[94] as the "first assignment" is somewhat of a misnomer.  That document refers to the Property and Plaintiffs by name, but it does not designate an assignee and does not contain a recording stamp.[95]  Pursuant to Texas Property Code section 13.001 an unrecorded instrument binds the parties to that instrument and their heirs.[96]  Because there is no assignee here, there are no parties to bind.  The "first assignment" is merely an incomplete document and thus, not void or voidable.  Therefore, Plaintiffs lack standing to challenge the so-called first assignment.

### _The second assignment_

Plaintiffs offer the first assignment to demonstrate that the second assignment, Exhibit E,[97] is deficient because it is a manipulation of the first assignment and was modified after notarization.[98]  Specifically, Plaintiffs complain that the signatures of the assignor, the witnesses, and the notary, plus the date of execution and notarization on the second assignment are identical to those on the first, but that the second assignment contains handwritten changes not included on the first assignment.[99]

Taking as true that these deficiencies establish a "manipulation" of the first assignment, Plaintiffs provide no legal support for the proposition that a manipulation of a previously

---

[93] ECF Nos. 21-4, 21-5, 21-7.  The Court may review any documents attached to the complaint when deciding a FRCP 12(b)(6) motion.  _Lone Star Fund V (US), LP v. Barclays Bank PLC_, 594 F.3d 383, 387 (5th Cir. 2010).
[94] ECF No. 21-4.
[95] _Id._
[96] TEX. PROP. CODE § 13.001(b).
[97] ECF No. 21-5.
[98] ECF No. 21 at 9, ¶¶ 36–37.
[99] _Id._ ¶¶ 35–36.

incomplete and unrecorded assignment makes the second assignment void.  Moreover, "manipu-lation" is not a legal basis on which an assignment can be challenged.  There is either fraud or forgery.[100]  Texas law is clear that a homeowner does not have standing to challenge an assignment based on fraud because any claim of fraud belongs to the grantor of the assignment, rather than to the third-party homeowner.[101]  Conversely, a homeowner has standing to challenge an assignment based on forgery because a forged instrument is void.[102]  This Court cannot determine whether Plaintiffs' Complaint is alleging fraud or forgery or neither and thus, cannot determine whether Plaintiff has standing to challenge the second assignment as void.

To the extent Plaintiffs complain that the document was modified after being notarized and "therefore is not a sworn statement as to the modifications thereon,"[103]  Plaintiffs provide no con-trolling law that requires an assignment to be notarized.  Under Texas law, a mortgage assignment must be notarized for recording, but Texas's recording statute protects subsequent purchasers for value and without notice.[104]  Errors in the notarization of the assignment may prevent Defendant from enforcing the Note and Deed of Trust against a third party who purchased the Property from Plaintiffs without actual knowledge of the mortgage, but it does not affect Defendant's rights against Plaintiffs.[105]

While Plaintiffs may have standing to challenge the second assignment based on forgery, Plaintiffs have not alleged facts from which this Court can conclude that Plaintiffs are bringing such a claim.  Thus, because "manipulation" is not a legal basis on which an assignment can be

---

[100] *Everbank v. Seedergy Ventures, Inc.*, 499 S.W.3d 534, 542 (Tex. App.—Houston [14th Dist.] 2016, no pet.).
[101] *Id.*
[102] *Id.* (citing *Vazquez v. Deutsche Bank Nat'l Trust Co.*, 441 S.W.3d 783, 787 (Tex. App.—Houston [1st Dist.] 2014, no pet.)).
[103] ECF No. 21 at 9, ¶ 37.
[104] *Reinagel v. Deutsche Bank Nat'l Trust Co.*, 735 F.3d 220, 227 (5th Cir. 2013) (citing TEX. PROP. CODE §§ 12.001(b), 13.001(a)).
[105] *See id.*

challenged and improper notarization does not affect Defendant's rights against Plaintiffs, Plaintiffs lack standing to challenge the second assignment.

### *The third assignment*

Plaintiffs' final flawed argument is that the third assignment was not filed in the same manner as the original instrument as required by Texas Local Government Code section 192.007(a) because it was signed by Defendant, not InterBay Funding, LLC, the alleged valid holder of the Deed of Trust.[106]  Texas Local Government Code section 192.007(a) provides:

> To release, transfer, assign, or take another action relating to an instrument that is filed, registered, or recorded in the office of the county clerk, a person must file, register, or record another instrument relating to the action in the same manner as the original instrument was required to be filed, registered, or recorded.

It is well settled that "the absence of recordation in compliance with section 192.007 of the Texas Local Government Code 'does not affect the validity of the assigned deed of trust *between the homeowner and the lender*.'"[107]  Rather, that section "is best read as a procedural directive to county clerks, not as a prerequisite to the validity of assignments."[108]

Plaintiffs also allege that Defendant "in essence, attempted to assign the Deed of Trust to itself."[109]  That allegation is factually inaccurate on the face of the third assignment attached to the Complaint at Exhibit G.[110]  Wachovia Bank, N.A., as Indenture Trustee (Bayview), was the

ASSIGNOR: **WACHOVIA BANK, N. A. AS TRUSTEE (BAYVIEW) BY ITS ATTORNEY-IN-FACT BAYVIEW LOAN SERVICING, LLC**
4425 Ponce de Leon Blvd., Coral Gables, FL 33146

By: _____
ROBERT G. HALL, Vice-President

---

[106] ECF No. 21 at 20–21, ¶ 95.
[107] *Countrywide Home Loans, Inc. v. Cowin (In re Cowin)*, 492 B.R. 858, 888 (Bankr. S.D. Tex. 2013) (citing *Hill v. U.S. Bank, N.A. (In re Perry)*, 2013 Bankr. LEXIS 534, at *8 (Bankr. S.D. Tex. Feb. 8, 2013) (collecting cases)).
[108] *Reinagel*, 735 F.3d at 228 n.27.
[109] ECF No. 21 at 10, ¶ 43.
[110] ECF No. 21-7.

assignee on the second assignment.[111]  The third assignment designates Bayview Loan Servicing, LLC, as the assignee and the signature block reflects:[112]  Plaintiffs did not plead that Robert G. Hall, the signatory, lacked authority to act on behalf of Defendant or that Defendant lacked authority to act on behalf of Wachovia Bank, N.A. and thus, Plaintiffs' challenge to the validity of the third assignment fails.[113]  Plaintiffs lack standing to challenge the third assignment because Texas Local Government Code section 192.007(a) does not affect the validity of the Deed of Trust and Plaintiffs did not plead that Defendant lacked authority to act on behalf of Wachovia Bank, N.A. as its attorney-in-fact.  Defendant's Motion as to Plaintiffs' Count II regarding the assignments is granted.

Accordingly, Plaintiffs' Count II is dismissed with prejudice.  The Court will not grant Plaintiffs leave to re-plead Count II under FRCP 15(a) because such an amendment would be futile where Count II also fails on *res judicata* grounds as explained below.  Finally, Defendant's Motion to Dismiss does not question Plaintiffs' standing to challenge the validity of Defendant's lien based on the missing legal description in the Deed of Trust.[114]  Nevertheless, that portion of Plaintiffs' Count II will also be dismissed on *res judicata* grounds as discussed more fully infra.

### b.  Whether Plaintiffs' claims are barred by judicial estoppel

Defendant argues that Plaintiffs are judicially estopped from challenging the validity of Defendant's lien in this case because they consistently acknowledged the validity of Defendant's lien in the 2011 Case.[115]  Judicial estoppel may be properly raised in a motion to dismiss under FRCP 12(b)(6) where its application is warranted on the face of the pleadings and in judicially

---

[111] ECF No. 21-5.
[112] ECF No. 21-7.
[113] *See Reinagel*, 735 F.3d at 226 (finding that the plaintiffs' challenge to the validity of the assignment failed on its own terms because the plaintiffs did not allege that the signatory misrepresented the scope of her authority in executing the assignment as attorney in fact).
[114] See ECF No. 34 at 17–18.
[115] ECF No. 34 at 15.

noticed facts.[116]  The doctrine is intended to "prevent[] internal inconsistency, preclude[] litigants

from 'playing fast and loose' with the courts, and prohibit[] parties from deliberately changing

positions based upon the exigencies of the moment."[117]  In evaluating whether judicial estoppel

should apply, courts in the Fifth Circuit consider whether: (i) the position of the party to be es-

topped is clearly inconsistent with its previous one; (ii) the party to be estopped convinced the

court to accept that previous position; and (iii) the party to be estopped acted inadvertently.[118]  This

Court adds a fourth factor to its analysis and also considers (iv) whether Plaintiffs would derive an

unfair advantage or impose an unfair detriment on Defendant if not estopped.[119]

### i. Plaintiffs' position is clearly inconsistent with their previous one

The first judicial estoppel factor considers whether Plaintiffs' contention that Defendant's

lien is invalid is contrary to Plaintiffs' position in the 2011 Case.[120]  To find that Plaintiffs' position

is inconsistent, Plaintiffs' change of position must be clear and express and not merely implied.[121]

Plaintiffs' Complaint pled that Plaintiffs and Defendant executed a Modification Agreement be-

fore the 2011 Case, restructuring the Note[122] and Plaintiffs paid Defendant $1,197.00[123] in on-

---

[116] *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 274–75, 274 n.7 (5th Cir. 2015).  *See also Hall*, 305 F. App'x. at 227–28 (unpublished) ("If, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper.") (citing *Kansa Reinsurance Co., Ltd.*, 20 F.3d at 1366); *Johnson v. Deutsche Bank Nat. Trust Co.*, 2013 WL 3810715, at *8 (N.D. Tex. July 23, 2013) ("[B]ecause the elements of judicial estoppel appear on the face of Plaintiff's complaint and in court filings that are subject to judicial notice, this affirmative defense may be properly considered for purposes of Defendants' motion to dismiss."); *Abreu v. Zale Corp.*, 2013 WL 1949845, at *1 (N.D. Tex. May 13, 2013) (considering judicial estoppel in the context of a motion for judgment on the pleadings under FRCP 12(c)).

[117] *Ergo Science, Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996) (citing *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993)).

[118] *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) (quoting *Reed v. City of Arlington*, 650 F.3d 571, 573–74 (5th Cir. 2011) (en banc)).

[119] *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001); *Hollie v. Bank of N.Y. Mellon (In re Hollie)*, 622 B.R. 221, 234 (Bankr. S.D. Tex. 2020) (citing *Hall v. GE Plastic Pac. PTE, Ltd.*, 327 F.3d 391, 396–400 (5th Cir. 2003)).

[120] *GE Plastic Pac. PTE, Ltd.*, 327 F.3d at 397 ("[A] party cannot advance one argument and then, for convenience or gamesmanship after that argument has served its purpose, advance a different and inconsistent argument.").

[121] *Wells Fargo Bank, N.A. v. Titus Chinedu Oparaji (In re Titus Chinedu Oparaji)*, 698 F.3d 231, 237 (5th Cir. 2012) (quoting *In re Condere Corp.*, 226 F.3d 642, 2000 WL 1029098, at *3 (5th Cir. 2000)).

[122] ECF No. 21 at 10, ¶ 38.

[123] Although Plaintiffs refer to the on-going mortgage payment in the amount of $1,197.40, the actual amount proposed in the confirmed plan was $1,197.00.

going mortgage payments under the 2011 Plan and thereafter according to this Court's Deem Current Order.[124] Those allegations show that Plaintiffs treated the lien as valid both before and during the 2011 Case.

Importantly, in the Agreed Order in the 2011 Case, this Court noted that Defendant and Plaintiffs, through their attorney, "reached an agreement whereby the automatic stay of 11 U.S.C. § 362 should be continued in effect" and stated:

> . . . the Debtors shall amend their Chapter 13 plan to provide for payment to the Chapter 13 Trustee through the Amended Plan of all future post-petition payments due Movant pursuant to that certain Promissory Note dated NOVEMBER 9, 2001 in the original principal sum of $68,000.00 executed by Debtors, bearing interest and being payable as therein set out and that certain Modification Agreement executed on or about JANUARY 25, 2010, being secured by the Deed of Trust and Security Agreement of even date therewith, filed in the Official Public Records of Real Property of HIDALGO County, Texas, and creating a valid, first and prior lien on improved real property in HIDALGO County, Texas, being further described as follows:
>
> > LOT SEVEN (7), DELLINGER SUBDIVISION, AN ADDITION TO THE CITY OF MERCEDES, HIDALGO COUNTY, TEXAS, AS PER MAP OR PLAT THEREOF RECORDED IN VOLUME 22, PAGE 39 MAP RECORDS, HIDALGO COUNTY TEXAS AND PROPERTY MORE COMMONLY KNOWN AS 3085 WEST EXPRESSWAY 83, MERCEDES, TEXAS 78596 ("PROPERTY").[125]

The signature of Plaintiffs' counsel, Raul E. Mora, affixed at the bottom of the Agreed Order approving and certifying compliance with Federal Rule of Bankruptcy Procedure 4001, represents Plaintiffs' acceptance of the validity of Defendant's lien in the 2011 Case.[126] Additionally,

---

[124] ECF No. 21 at 12–14, ¶¶ 54, 56–57, 60, 64.

[125] 11-70475, ECF No. 91.  Defendant requested that this Court take judicial notice of all docket entries in Case No. 11-70475 referenced in Defendant's Motion to Dismiss.  ECF No. 34 at 5 n.2.  Plaintiffs did not object.  ECF No. 37.  Taking judicial notice of matters of public record is proper in deciding a 12(b)(6) motion.  *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).  The docket entries in Case No. 11-70475 are "not subject to reasonable dispute because [they] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201(b)(2).  Therefore, this Court takes judicial notice of all docket entries in Case No. 11-70475.

[126] *In re Hollie*, 622 B.R. at 235 (finding that the first factor of judicial estoppel was satisfied because the plaintiff had previously entered into an agreed judgment avoiding a completed foreclosure and reinstating the plaintiff's ownership in the property, indicating the plaintiff's acceptance of the validity of the loan).

Plaintiffs pled that after receiving their discharge on September 13, 2018, they continued making payments directly to Defendant until November 2018 when Plaintiffs "grew terribly frustrated with Defendant's practices post-discharge."[127]  Thus, even after receiving a discharge in the 2011 Case, Plaintiffs continued to treat Defendant's lien as valid.

Accordingly, the first factor is satisfied.

### ii.   Plaintiffs convinced this Court to accept their previous position

The second judicial estoppel factor considers whether Plaintiffs convinced the court to accept its prior inconsistent position.[128]  Referred to as the "prior success" or "judicial acceptance" factor, this requirement seeks to "minimize the danger of a party contradicting a court's determination based on the party's prior position and, thus, mitigate the corresponding threat to judicial integrity."[129]  Judicial acceptance does not mean that the party to be estopped was successful on the merits; rather, it merely means that the party made the argument "with the explicit intent to induce the district court's reliance[,]"[130] and the court accepted or relied on the party's position in making a determination.[131]  Courts exercise great caution in applying judicial estoppel "because the doctrine precludes a contradictory position without examining the truth of either statement."[132]  This requires that the party seeking judicial estoppel "affirmatively show, by competent evidence or inescapable inference, that the prior court adopted or relied upon the previous inconsistent assertion."[133]

---

[127] ECF No. 21 at 4, 15–16, ¶¶ 5, 70–71.

[128] *New Hampshire*, 532 U.S. at 749–50.

[129] *GE Plastic Pac. PTE, Ltd.*, 327 F.3d at 398 (cleaned up) (quoting *Brown Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 206 (5th Cir. 1999)).

[130] *Id.* (quoting *Hidden Oaks v. City of Austin*, 138 F.3d 1036, 1047 (5th Cir. 1998)).

[131] *Id.* (quoting *Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 836 (5th Cir. 2000)).

[132] *Perry v. Blum*, 629 F.2d 1, 11 (1st Cir. 2010) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)).

[133] *Id.* at 11–12 (first citing *United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Emps. Of ASARCO, Inc.*, 512 F.3d 555, 563–64 (9th Cir. 2008); then citing *United States v. Levasseur*, 846 F.2d 786, 794 (1st Cir. 1988)).  *See also Andrade v. Countrywide KB Home Loans*, 2015 U.S. Dist. LEXIS 116967, *21 (N.D. Tex. July 13, 2015) ("As

Entry of an agreed order that accepts a party's position generally satisfies the judicial acceptance factor.[134]   This Court's Agreed Order in the 2011 Case stated, "it appearing that due notice of said Motion having been properly given by the Court, having considered said Motion and the agreement of counsel, is of the opinion that the following Agreed Order should be entered."[135]   This Court accepted Plaintiffs' prior inconsistent position that the lien was valid when it entered the Agreed Order.   Additionally, this Court's confirmation and approval of the modification to Plaintiffs' 2011 Plan constitutes acceptance.[136]   Plaintiffs scheduled Defendant as a creditor holding a secured, undisputed claim[137] and provisioned for arrearage and on-going mortgage payments to Defendant in their 2011 Plan,[138] demonstrating that Plaintiffs accepted Defendant's lien as valid.   This Court relied on that representation when it confirmed the 2011 Plan and approved the later modification.

Accordingly, the second factor of judicial estoppel is satisfied.

### iii.   Plaintiffs acted inadvertently

This factor asks whether Plaintiffs acted inadvertently in failing to assert their claim that Defendant's lien was invalid in the 2011 Case.   In bankruptcy, "the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge

---

with any affirmative defense, '[t]he burden to prove judicial estoppel is on the party invoking the doctrine.'") (quoting *Thompson v. Sanderson Farms, Inc.*, 2006 U.S. Dist. LEXIS 48409, at *8 (S.D. Miss. May 31, 2006)).

[134] *See*, *In re Hollie*, 622 B.R. at 235 (finding that "[e]ntry of a judgment that agrees with a litigant's position is undoubtedly the court's acceptance of a litigant's position."); *In re Save Our Springs (S.O.S.) Alliance, Inc.*, 393 B.R. 452, 458–61 (Bankr. W.D. Tex. 2008) (finding that the agreed order submitted by the debtor and its creditor for approval by the court, which indicated that the debtor was a small business, was one of several pieces of evidence indicating that the court previously accepted the debtor's position that it was a small business); *Fill It Up, LLC v. MS LZ Delta, LLC*, 342 F. Supp. 3d 707, 715–16 (N.D. Miss. 2018) (finding that the judicial acceptance prong was met because the debtor was granted an automatic stay in its bankruptcy proceedings and because the bankruptcy court subsequently entered an agreed order abandoning certain bankruptcy estate property).

[135] 11-70475, ECF No. 91.

[136] *See In re Rankin*, 141 B.R. 315, 322 (Bankr. W.D. Tex. 1992) (finding that judicial estoppel applied to the debtor's inconsistent position because the court previously accepted the debtor's prior position and confirmed the debtor's plan based on the fact that the creditor and another party withdrew their objections to the plan).

[137] 11-70475, ECF No. 1

[138] ECF No. 21 at 12–13, ¶¶ 53, 60.

of the undisclosed claims or has no motive for their concealment."[139]  To lack knowledge of an undisclosed claim, Plaintiffs must have been unaware of the facts giving rise to their claim during the pendency of their 2011 Case.[140]

Here, Plaintiffs maintain that they failed to challenge the validity of Defendant's lien in the 2011 Case because they were unaware of the allegedly deficient assignments due to Defendant's failure to disclose those assignments in the prior case.[141]  However, Plaintiffs' Complaint also states that the third deficient assignment was recorded in Hidalgo County on August 1, 2011,[142] the same day Plaintiffs filed the 2011 Case, and thus was discoverable in the public records during the pendency of that case.[143]  Additionally, Plaintiffs had access to the Deed of Trust with the missing legal description as far back as November 9, 2001.  Because the facts on which Plaintiffs' Counts I and II are based were available to Plaintiffs from the beginning, Plaintiffs did not lack knowledge of their claims.

Courts also consider whether the offending party had any motive to conceal the claim.  In the Fifth Circuit, "the motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court.  Motivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure."[144]  The pertinent inquiry is whether Plaintiffs would reap a windfall if they are able to recover on the undisclosed claim without having disclosed it to their creditors in their 2011 Case.[145]  That result "would permit debtors to 'conceal

---

[139] *Id.* at 210.

[140] *See Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) ("According to *Browning*, to claim that her failure to disclose was inadvertent [the debtor] must show not that she was unaware that she had a duty to disclose her claims but that, at the time she filed her bankruptcy petition, she was unaware of the facts giving rise to them.") (citing *In re Coastal Plains, Inc.*, 179 F.3d at 211–12).

[141] ECF No. 37 at 11.

[142] ECF No. 21 at 10, ¶ 40.

[143] 11-70475, ECF No. 1.

[144] *Love*, 677 F.3d at 262 (cleaned up) (quoting *Thompson v. Sanderson Farms, Inc.*, 2006 U.S. Dist. LEXIS 48409, at *12–13 (S.D. Miss. May 31, 2006)).

[145] *Superior Crewboats, Inc. v. P & I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 336 (5th Cir.

their claims; get rid of [their] creditors on the cheap, and start over with a bundle of rights.'"[146] The debtor's intent at the time of the non-disclosure controls the Court's analysis of this sub-element.[147]

"[A] debtor's motive to conceal is presumed as a matter of law—because of the structure of the bankruptcy process, a debtor that fails to disclose a claim during the bankruptcy, but later pursues it after discharge or confirmation, always has the potential to gain a windfall."[148]  Based on Plaintiffs' Complaint and judicially noticed facts, Plaintiffs' intent at the time of the non-disclosure in the 2011 Case was to treat Defendant's lien as if it was valid and continue to make payments thereon.  Frustrated by "[Defendant]'s practices post-discharge," however, Plaintiffs stopped making payments on the debt only two months after receiving a discharge.[149]  Only now do Plaintiffs assert that Defendant's lien is invalid.  But Plaintiffs' motivation after the bankruptcy case was closed or discharged is irrelevant; their motivation at the time of the non-disclosure is all this Court can consider.[150]

Additionally, Plaintiffs' 2011 Plan proposed to pay unsecured creditors 20% pro rata but was subsequently modified to pay unsecured creditors at 100%.[151]  That plan modification was approved.[152]  The chapter 13 trustee's Final Report and Account reflects that Plaintiffs' unsecured claims were paid in full.[153]  Plaintiffs would not reap a windfall if they were able to recover on the undisclosed claim without disclosing that claim to the creditors in their 2011 Case because the

---

2004).

[146] *In re Superior Crewboats*, 374 F.3d at 336 (quoting *Payless Wholesale Distribs., Inc. v. Alberto Culver, Inc.*, 989 F.2d 570, 571 (1st Cir. 1993)).

[147] *Love*, 677 F.3d at 263 (quoting *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1276 (11th Cir. 2010)).

[148] *ASARCO, LLC v. Mont. Res., Inc.*, 514 B.R. 168, 195–96 (S.D. Tex. 2013) (citing *Love*, 677 F.3d at 262).

[149] ECF No. 21 at 15–16, ¶ 71.

[150] *Allen v. C & H Distribs., L.L.C.*, 813 F.3d 566, 574 (5th Cir. 2015).

[151] 11-70475, ECF No. 184-1 at 15, ¶ 10.

[152] 11-70475, ECF No. 186.

[153] 11-70475, ECF No. 225.

2011 Plan as modified was a 100% plan.  Consequently, the presumption that Plaintiffs had a motive to conceal is rebutted by Plaintiffs' Complaint and judicially noticed facts.  Application of judicial estoppel is not appropriate where a party acted inadvertently either because it lacked knowledge of the undisclosed claim or had no motive for concealment.[154]  Plaintiffs acted inadvertently because they had no motive to conceal the claim.

Accordingly, the third factor is not satisfied.

### iv.  Plaintiffs would derive an unfair advantage if not estopped

The Court considers whether Plaintiffs would receive an unfair advantage or impose an unfair detriment on Defendant if not estopped.[155]  As discussed above, Plaintiffs' Complaint reflects that they acknowledged the validity of the lien throughout their 2011 Case when doing so benefitted them from plan confirmation to discharge.  Plaintiffs' Complaint also reflects that they quit making their mortgage payments only after they became frustrated with Defendant's post-discharge behavior and disavowed the lien's validity for the first time in their Objection in the instant case.  To permit Plaintiffs to acknowledge the validity of Defendant's lien when it is in their interest and now disavow that lien because their interests have changed would confer an unfair advantage on Plaintiffs.[156]

The fourth factor is satisfied.  Nevertheless, despite finding that three of the four factors of judicial estoppel are met, the Court finds that Plaintiffs acted inadvertently in the 2011 Case and thus, judicial estoppel is not appropriate.

---

[154] *United States ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 272 (5th Cir. 2015) ("To be sure, if a debtor's failing to disclose was inadvertent, judicial estoppel is inappropriate . . . .").
[155] *New Hampshire*, 532 U.S. at 751.
[156] *See Knigge v. SunTrust Mortg., Inc. (In re Knigge)*, 479 B.R. 500, 508 (8th Cir. B.A.P. 2012) (estopping the debtors from arguing that the mortgage company lacked standing to enforce a promissory note and deed of trust after the debtors recognized the lien as valid in their previous bankruptcy case, noting "[w]e will not permit the Debtors to acknowledge [the mortgagee's] lien when it was in their interest, and then change their position to contest [the mortgagee's] position when that would provide them with an advantage in their adversary proceeding.").

Accordingly, Defendant's request for dismissal on the grounds of judicial estoppel is denied.

### c.  Whether Plaintiffs' claims are barred by *res judicata*

Defendant asserts that Plaintiffs' Counts I and II, relating to the validity of the lien and seeking avoidance of the loan and lien, may not be asserted in this adversary proceeding because they are barred by *res judicata* and the claims should accordingly be dismissed.[157]  The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as *res judicata*.[158]  *Res judicata* applies with equal force in the context of bankruptcy proceedings.[159]  The doctrine of *res judicata* bars litigation of a claim previously litigated or one that could or should have been raised in a prior suit if: (1) the parties are identical in both actions; (2) a court of competent jurisdiction rendered the prior judgement; (3) there was a final adjudication on the merits; and (4) both cases involve the same cause of action.[160]

Defendant argues that "Plaintiffs' claims are barred by *res judicata* based on this Court's entry of the Agreed Order Relative to the Automatic Stay of 11 U.S.C. § 362 in [case number 11-70475]."[161]  Defendant contends that: (1) the parties in this proceeding are identical to those in Plaintiffs' prior chapter 13 case; (2) this Court issued the prior Agreed Order[162] and is a court of competent jurisdiction over the claims allowance process in the prior case; (3) the Agreed Order was final and appealable even though Plaintiffs failed to appeal; and (4) both cases involve the same causes of action—Defendant's proof of claim against Plaintiffs[163] and the validity of

---

[157] ECF No. 34 at 11.
[158] *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).
[159] *In re Paige*, 610 F.3d 865, 870 n.1 (5th Cir. 2010) (citing *In re Baudoin*, 981 F.2d 736, 740 (5th Cir. 1993) ("This Court has [long] recognized the important interest in the finality of judgments in a bankruptcy case.")).
[160] *In re Shank*, 569 B.R. 238, 257 (Bankr. S.D. Tex. 2017).
[161] ECF No. 34 at 13.
[162] 11-70475, ECF No. 91.
[163] ECF No. 34 at 13–14.

Defendant's lien on the Property[164]—which have been resolved by this Court.[165]  Defendant further

argues that even if Plaintiffs did not challenge the validity of Defendant's lien in the 2011 Case,

they should have, and where a plaintiff failed to raise a claim that could or should have been raised

in an earlier suit, that claim is barred by *res judicata*.[166]

Plaintiffs respond that "generally a *res judicata* contention cannot be brought in a motion

to dismiss; it must be pleaded as an affirmative defense."[167]  Plaintiffs insist that the validity of

Defendant's lien was not litigated because (1) there was no litigated objection to Defendant's claim

in the 2011 Case, and therefore, the voidness of the lien, the invalidity of the assignments, and

Defendant's status as a lienholder was not questioned; and (2) to challenge the validity of Defend-

ant's lien, Federal Rule of Bankruptcy Procedure 7001(2) requires Plaintiffs to bring an adversary

proceeding, which they did not do previously.[168]  Plaintiffs also contend that three deficient as-

signments form the basis of Plaintiffs' claim that Defendant's lien is void and those deficient as-

signments were not presented in the 2011 Case.[169]  Only in the current bankruptcy case, Plaintiffs

continue, did Defendant attach one of the deficient assignments to its proof of claim.[170]

Lastly, Plaintiffs argue that because Defendant's lien is void, not merely voidable, *res ju-

dicata* cannot cutoff Plaintiffs' constitutional rights under section 50(c) of the Texas Constitution

to a determination of quiet title.[171]  In support, Plaintiffs cite *Jackson*, which says, "[f]aced with

changing law, courts hearing questions of constitutional right cannot be limited by res judicata.  If

---

[164] ECF No. 38 at 2.
[165] ECF No. 34 at 13–14.
[166] ECF No. 38 at 4 (citing *Petro-Hunt, L.L.C. v. U.S.*, 365 F.3d 385, 395 (5th Cir. 2004)).
[167] ECF No. 37 at 10 (citing *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008)).
[168] *Id.* at 11–12.
[169] *Id.* at 12–13.
[170] *Id.*
[171] ECF No. 37 at 11; *see Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 525, 550 (Tex. 2016) (holding that no statute of limitations applies to cut off a homeowner's right to quiet title to real property encumbered by an invalid lien under article 16, section 50(c) of the Texas Constitution).

they were, the Constitution would be applied differently in different locations."[172]   This Court disagrees with Plaintiffs.  The Court in *Jackson* is not referring to the Texas Constitution, but rather to the United States Constitution.  Because Plaintiffs are alleging that Defendant's lien is void under the Texas Constitution, Texas law controls.  As this Court acknowledged in *Hollie*, "Texas courts have recognized that claims based on violations of the home equity provisions of the Texas Constitution may be barred by *res judicata*."[173]   Accordingly, if Plaintiffs should have challenged the validity of Defendant's lien in the 2011 Case, it may be barred by *res judicata* under Texas law.

### i.  This Court may consider both Plaintiffs' Complaint and any judicially noticed facts for purposes of *res judicata*

Generally, *res judicata* should not be raised in a motion to dismiss and is reserved for summary judgment or trial.[174]   Two exceptions apply.  The first, permitting a Court to treat a motion to dismiss based on *res judicata* as a motion for summary judgment, is not applicable in this case.  Relevant here and forming the basis of the parties' disagreement is the exception that a finding of *res judicata* can be made at the motion to dismiss stage, if a successful affirmative defense of *res judicata* appears from the facts pled.[175]   Based on the case law cited below, the parties disagree as to whether *res judicata* must appear on the face of the complaint alone or whether judicially noticed facts may also be considered.

---

[172] *Jackson v. De Soto Parish Sch. Bd.*, 585 F.2d 726, 729 (5th Cir. 1978) (quoting *Parnell v. Rapides Parish Sch. Bd.*, 563 F.2d 180, 185 (5th Cir. 1977)).

[173] *Hollie v. Bank of N.Y. Mellon (In re Hollie)*, 622 B.R. 221, 230 (Bankr. S.D. Tex. 2020).

[174] *See Johnson-Williams v. CitiMortgage, Inc.*, 2018 U.S. Dist. LEXIS 33504, at *19 (N.D. Tex. Jan. 31, 2018) (citing *Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 664 n.1 (5th Cir. 2004)); *see also e.g.*, *Moch v. East Baton Rouge Parish School Bd.*, 548 f.2d 594, 596 n.3 (5th Cir. 1977) ("Generally, a party cannot base a 12(b)(6) motion on res judicata."); *Amoco Prod. Co.*, 794 f.2d 967, 970 (5th Cir. 1986) (noting that FRCP 12(b)(6) only applies to affirmative defenses that appear on the face of the plaintiffs' complaint).

[175] *Limon v. Berryco Barge Lines, L.L.C.*, 779 F. Supp. 2d 577, 581–83 (S.D. Tex. 2011) (noting that two exceptions to the bar on *res judicata* in a motion to dismiss are recognized in the Fifth Circuit).

Citing to the Fifth Circuit's *Hall* and *Kansa* opinions, Defendant maintains that *res judicata* is appropriate at the motion to dismiss stage if it appears on the face of the complaint and any judicially noticed facts.[176]   Defendant asks this Court to take judicial notice of the Agreed Order in Plaintiffs' previous chapter 13 bankruptcy, which states in part that the promissory note secured by a deed of trust and security agreement created a valid, first and prior lien on the Property.[177] Nevertheless, Defendant says, even if judicially noticed facts cannot be considered, *res judicata* appears on the face of Plaintiffs' Complaint.[178]   In *Hall*, the Fifth Circuit notes that "[i]n ruling on a FRCP 12(b)(6) motion to dismiss, the district court cannot look beyond the pleadings," but that "[i]n addition to facts alleged in the pleadings, however, the district court 'may also consider matters of which [it] may take judicial notice.'"[179]   Citing its earlier decision, *Kansa*, the Court concluded that "[i]f, based on the facts pleaded *and judicially noticed*, a successful affirmative defense appears, then dismissal under FRCP 12(b)(6) is proper."[180]

Plaintiffs, on the other hand, citing to *Grynberg* and *Pike*, insist that *res judicata* must appear on the face of the pleadings alone and that it does not appear solely from the facts pled in their Complaint.[181]   In *Grynberg*, the Southern District of Texas said, "unless the complaint itself sets forth the facts necessary to determine that *res judicata* precludes adjudication, summary judgment is the proper standard for determining whether a claim should be dismissed on *res judicata*."[182]   And in *Pike*, the district court in Louisiana explained that although judicial notice is

---

[176] ECF No. 34 at 11.
[177] *See* ECF No. 34 at 1 n.1 (citing 11-70475, ECF No. 91).
[178] ECF No. 38 at 1–2.
[179] 305 F. App'x 224, 227 (2008) (citing *Lovelace*, 78 F.3d 1015, 1017–18 (5th Cir. 1996)).
[180] *Id.* at 227–28 (emphasis added) (citing *Kansa Reinsurance Co., Ltd. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)).
[181] ECF No. 37 at 10.
[182] *Grynberg v. BP P.L.C.*, 855 F. Supp. 2d 625, 648 (S.D. Tex. 2012) *aff'd*, 527 F. App'x 278 (5th Cir. 2013)).

appropriate on a motion to dismiss, it must nevertheless be "readily apparent on the face of [the] pleadings that *res judicata* should apply."[183]

Both parties overlook a recent Fifth Circuit decision that in no uncertain terms states, "dismissal under FRCP 12(b)(6) is appropriate if the res judicata bar is apparent from the pleadings and judicially noticed facts."[184]   *Basic Capital Management* is binding on this Court and more recent than *Grynberg* and *Pike*.  Therefore, this Court may look to both Plaintiffs' Complaint and judicially noticed facts.  This Court will consider the Complaint first.

### ii.  A successful *res judicata* defense appears of the face of Plaintiffs' Complaint

Defendant is correct that facts to satisfy the first three elements of *res judicata*—the parties, a court of competent jurisdiction, and final adjudication on the merits—appear on the face of Plaintiffs' Complaint.  Plaintiffs pled that Defendant filed a proof of claim in Plaintiffs' 2011 Case and that the Agreed Order was entered by this Court in presiding over that bankruptcy case.[185]   The Agreed Order, which Plaintiffs' Complaint indicates granted Defendant's Motion to Lift Stay, was a final order and is entitled to full *res judicata* effect.[186]

Whether the fourth element—the same cause of action in both cases—appears on the face of Plaintiffs' Complaint requires closer scrutiny.  In assessing the fourth element, the Fifth Circuit employs the transactional test, which asks whether the prior case and the current case are based on the same nucleus of operative facts.[187]   Courts must question "whether the facts are related in time,

---

[183] *Pike v. Off. of Alcohol & Tobacco Control of the Louisiana Dep't of Revenue*, 157 F. Supp. 3d 523, 531 (M.D. La. 2015).

[184] *Basic Capital Mgmt. v. Dynex Capital, Inc.*, 976 F.3d 585, 591 (5th Cir. 2020) (quoting *Kahn v. Ripley*, 772 F. App'x 141, 142 (5th Cir. 2019)).

[185] *See* ECF No. 21 at 12, ¶¶ 52–54, 57.

[186] *See, e.g.*, *Chunn v. Chunn (In re Chunn)*, 106 F.3d 1239, 1241 (5th Cir. 1997) ("We . . . conclude that an order granting relief from an automatic stay is a final and appealable order."); *In re Hollie*, 622 B.R. at 231 ("Courts routinely recognize that an agreed judgment . . . is final and entitled to full *res judicata* effect.").

[187] *United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007).

space, origin, or motivation."[188] Here, the face of Plaintiffs' Complaint shows that Defendant's proofs of claim in both the 2011 Case and the instant bankruptcy case were based on the same mortgage loan[189] and that those proofs of claim and the amounts owed to Defendant are central in both cases.[190] The Complaint also specifies that Plaintiffs were motivated to file the 2011 Case and the present case for the same reason: to prevent foreclosure. Plaintiffs' Complaint states, "[t]he [Plaintiffs] filed the present bankruptcy case to stop [Defendant's] foreclosure[,]"[191] and details a series of prior bankruptcy cases filed by Plaintiffs starting in 2002, to "preserve the properties at issue and resolve all accounting issues."[192]

The Court concludes that the 2011 Case and the instant case are based on the same nucleus of operative facts because those facts are related in time, space, origin, and motivation. Finding that the four elements of *res judicata* are apparent on the face of the pleadings, this Court now considers whether Plaintiffs should have challenged the validity of Defendant's lien in the 2011 Case.[193]

Plaintiffs' Counts I and II challenge the validity of Defendant's lien on different bases. Count I alleges that Defendant's lien on Plaintiffs' Property is a lien on a homestead created by a commercial loan in violation of section 50(a) of the Texas Constitution.[194] In support, Plaintiffs allege that: (1) InterBay's loan documents included statements that the loan was a commercial one; (2) Mr. Bocanegra, an agent of the original lender, InterBay, knew Plaintiffs lived at the property;

---

[188] *Jackson v. Novastar Mortg., Inc.*, 2014 U.S. Dist. LEXIS 189382, at *10 (S.D. Tex. Feb. 6, 2014) (quoting *Test Masters*, 428 F.3d at 571).

[189] ECF No. 21 at 4–5, 10–12, ¶¶ 5, 7, 22, 44–57.

[190] *Id.* at 10–13, ¶¶ 44–57.

[191] *Id.* at 4, 17, ¶¶ 5, 79.

[192] *Id.* at 4, ¶ 4.

[193] *See D-1 Enters., Inc. v. Commercial State Bank*, 864 F.2d 36, 38 (5th Cir. 1989) ("Essential to the application of the doctrine of *res judicata* is the principle that the previously unlitigated claim to be precluded could and should have been brought in the earlier litigation.") (citing *Southmark Props. v. Charles House Corp.*, 742 F.2d 862, 871 (5th Cir. 1984)).

[194] ECF No. 21 at 19, ¶ 88.

(3) Plaintiffs' Application was titled "Uniform Residential Loan Application"; and (4) that Application indicated that the Property was Plaintiffs' primary residence.[195]  Count II alleges that Defendant's lien is invalid because the Deed of Trust does not contain a legal description and the three assignments purporting to make Defendant the legal holder of the Note and Deed of Trust were defective.[196]

Plaintiffs claim that they couldn't have challenged the lien's validity in the 2011 Case because the deficient assignments were not previously produced by Defendant.  However, per Plaintiffs' Complaint, the third assignment was recorded in Hidalgo County on August 1, 2011,[197] the same day Plaintiffs filed the 2011 Case, and approximately five months before Defendant's Motion to Lift Stay was filed and six months before this Court entered the Agreed Order resolving that motion.[198]  Because the third assignment was public record at the time and could have been discovered, Plaintiffs' argument that the assignments were new facts discovered after January 27, 2012, when the Agreed Order was entered,[199] is without merit..  Similarly, the Deed of Trust was executed November 9, 2001,[200] making any of the discrepancies therein discoverable a decade before the 2011 Case.

Moreover, an analogous Texas state court case—*Belay*—applying the federal law of *res judicata*, illustrates why Plaintiffs should have challenged Defendant's lien in the 2011 Case.  In *Belay*, shortly after receiving notice of judicial foreclosure on her home equity loan, a homeowner filed for bankruptcy.[201]  The bankruptcy proceeding was dismissed and several months later, the

---

[195] *Id.* at 3–4, 7–8, ¶¶ 2, 21–25.
[196] *Id.* at 20–21, ¶¶ 92–96.
[197] *Id.* at 10, ¶ 40.
[198] *Id.* at 12–13, ¶ 57 (indicating that Community's Motion to Lift Stay was filed on December 21, 2011, and this Court entered the Agreed Order resolving that motion on January 27, 2012).
[199] ECF No. 37 at 12–13.
[200] ECF No. 21 at 7, ¶ 21.
[201] *Belay v. Wells Fargo Bank, N.A.*, 2020 Tex. App. LEXIS 5514, at *1 (Tex. App.—Amarillo Jul. 16, 2020, no pet.).

debtor filed a second bankruptcy petition.  The lender filed a motion to lift the stay so that it could foreclose on the debtor's property.  In that motion, the lender indicated that the debtor had 14 days to file a timely response to the motion, otherwise the motion could be granted without a hearing.  The debtor filed her objection 19 days later, attaching an affidavit claiming that she did not sign or authorize the loan referenced in the lender's proof of claim and did not sign the deed of trust.  The bankruptcy court granted the lender's motion on the basis that timely response was not filed and entered an order lifting the stay.  The debtor did not appeal that order.

In the state district court, the lender filed a motion to reinstate the judicial foreclosure proceeding.  In response, the debtor argued that the lender could not foreclose on the home equity loan because it was void under the section 50(a) of the Texas Constitution.  The lender filed a motion for summary judgment asserting that the debtor's claim was barred by *res judicata* because she should have challenged the validity of the home equity loan in the bankruptcy court.  Affirming the state district court, the appellate court, applying the federal law of *res judicata* found all four elements of the doctrine satisfied.  The court further concluded that even though the validity of the lien was unlitigated in the bankruptcy court, it could and should have been because the lender's interest in the debtor's property was placed squarely before the bankruptcy court and determining whether a lender's lien is void goes directly to the issues to be determined in deciding on a motion to lift stay for purposes of foreclosure.

This case is strikingly similar to *Belay*.  Plaintiffs' Complaint reveals that the mortgage and balance thereof were at issue in the 2011 Case because Defendant's Motion to Lift Stay represented that Plaintiffs' ongoing monthly mortgage payments were $1,197.40 and the Agreed Order resolving that motion, ordered Plaintiffs to continue paying $1,197.40 per month and not the increased

amount of $1,251.57 as detailed in Defendant's NPC filed the month prior.[202]  Furthermore, just

as the homeowner in *Belay* filed bankruptcy to halt foreclosure, Plaintiffs' Complaint acknowl-

edges that Plaintiffs' 2011 Case was filed to "preserve the properties at issue."[203]

Although unlitigated in the 2011 Case, the validity of Defendant's lien was placed squarely

at issue when Defendant filed its Motion to Lift Stay and Plaintiffs could and should have chal-

lenged the lien's validity then.  Given Plaintiffs' factual allegations, a successful affirmative *res

judicata* defense so plainly appears on the face of Plaintiffs' Complaint alone that Plaintiffs'

Counts I and II cannot survive Defendant's FRCP 12(b)(6) challenge.

Accordingly, Defendant's Motion to Dismiss on *res judicata* grounds is granted.  Plaintiffs'

Counts I and II are dismissed with prejudice.  Additionally, Plaintiffs' challenge to the validity of

the lien based on the missing legal description in the Deed of Trust under Count II is dismissed

with prejudice on these grounds as well.

### 2.  Plaintiffs' Count III (violations of Federal Rule of Bankruptcy Procedure 3002.1)

Plaintiffs' Count III alleges that Defendant violated Federal Rule of Bankruptcy Procedure

3002.1(b) and (c).  Plaintiffs allege that Defendant changed Plaintiffs' monthly mortgage payment

three times—on September 1, 2013 to $1,276; on October 1, 2014 to $1,195; and on December 1,

2015 to $1,454—without filing the required Rule 3002.1(b) notice.  Plaintiffs also allege that De-

fendant violated Rule 3002.1(c) by assessing "BK Fees, Legal Fees or Costs, Property Inspection

Fees, and Title Costs," during the 2011 Case without filing the correct notice.[204]  Defendant moves

for dismissal of Count III, on the basis that (a) as a procedural rule, Rule 3002.1 does not create a

private cause of action; (b) violations of Rule 3002.1 in a prior case cannot be brought in a

---

[202] ECF No. 21 at 10–11, ¶¶ 56–57.
[203] *Id.* at 4, ¶ 4.
[204] ECF No. 21 at 17–18, 22–23, ¶¶ 80–81, 99, 104.

subsequent unrelated adversarial proceeding; (c) punitive monetary sanctions are not permitted under Rule 3002.1(i)(2); and (d) in the alternative, Plaintiffs have not pled any harm by Defendant's alleged failures to comply with Rule 3002.1.[205]   The Court will consider each in turn.

Rule 3002.1 applies to claims that are secured by a security interest in the debtor's principal residence and for which the plan provides that either the trustee or the debtor will make contractual installment payments.[206]  Rule 3002.1(b)(1) requires the holder of a claim to file and serve on the debtor, debtor's counsel, and the trustee a notice of any change in the payment amount, including any change that results from an interest-rate or escrow-account adjustment, no later than 21 days before a payment in the new amount is due.[207]  The Rule also provides the debtor an opportunity to object to such payment change by filing a motion to determine whether it is warranted.[208]  "If no motion is filed by the day before the new amount is due, the change goes into effect, unless the court orders otherwise."[209]

Subsection (c) of the Rule requires a holder of a claim to serve a notice itemizing fees, expenses, and charges "(1) that were incurred in connection with the claim after the bankruptcy case was filed; and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence."[210]  If the holder of a claim does not comply with these provisions, a court may "(1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure."[211]

---

[205] ECF No. 34 at 19–20.
[206] FED. R. BANKR. P. 3002.1(a).
[207] *Id.* at 3002.1(b)(1).
[208] *Id.* at 3002.1(b)(2).
[209] *Id.*
[210] *Id.* at 3002.1(c).
[211] *Id.* at 3002.1(i).

### a.   Whether Rule 3002.1 creates an independent cause of action

Defendant's first argument is that Rule 3002.1 is nothing more than a procedural rule, which does not in itself create a freestanding cause of action that is otherwise unavailable under substantive law for recovery of damages for an injury.[212]  Thus, Defendant concludes, "Plaintiffs are not entitled to use Rule 3002.1 as a basis for seeking recovery of actual damages, punitive damages, and/or sanctions."[213]   In support, Defendant cites an unpublished letter to counsel—*In re Tollstrup*—from the District of Oregon bankruptcy court.[214]   Plaintiffs counter that several courts, including this one, have already decided that Rule 3002.1 does create an independent cause of action.

The plain language of Rule 3002.1(i) provides that where "the holder of a claim fails to provide any information as required by subdivision (b), (c), or (g) of this rule, the court may, after notice and hearing . . . award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure."[215]   Rule 3002.1 lays out both the grounds of violation—failure to follow subdivision (b), (c), or (g)—and a remedy for such violations—appropriate relief.[216]   Even the advisory committee notes recognize that a chapter 13 debtor who has made all plan payments and whose case has been closed may move to have the case reopened for the purpose of seeking sanctions under Rule 3002.1(i).[217]

---

[212] ECF No. 34 at 21.

[213] ECF No. 34 at 21.

[214] ECF No. 34 at 20–21 (citing 2018 Bankr. LEXIS 767 (Bankr. D. Or. Mar. 16, 2018)).  The court in *Tollstrup* says, "Counsel: I write to explain my separate ruling on Debtors' [*sic*] Request for Hearing re: Notice of Mortgage Payment Change Filed by Nationstar Mortgage LLC and Motion for Additional Relief1Link to the text of the note filed by debtor, Kenneth Ray Tollstrup.  I will grant Tollstrup's motion but deny his request for punitive sanctions against Nationstar. He may separately move for an award of attorney fees and costs. This letter constitutes my findings of fact and conclusions of law." 2018 Bankr. LEXIS 767, at *1.

[215] FED. R. BANKR. P. 3002.1(i)(1).

[216] *Id.*

[217] FED. R. BANKR. P. 3002.1 advisory committee's note to 2011 adoption.

Nevertheless, this Court need not decide whether Rule 3002.1 creates an independent cause of action because Plaintiffs allege that Defendant violated Rule 3002.1(b) and (c) and subdivision (i)(2) permits this Court to award ". . . other appropriate relief, including reasonable expenses and attorney's fees. . ." for such violations.[218]  In *Trevino*, this Court held that although the plaintiffs there could have utilized a Rule 3002.1(e) contested matter to object to the defendants' 3002.1(c) notice, plaintiffs could also raise the objection in an adversary proceeding and in fact, *must* file an adversary proceeding when seeking to recover money or property.[219]  Here, Plaintiffs seek an array of sanctions, including the recovery of money for Defendant's alleged violations of the Rule.  Thus, it was appropriate for Plaintiffs to bring their Rule 3002.1 violations in this adversary proceeding.

*Tollstrup*, a non-binding opinion cited by Defendant, is not inconsistent with permitting Plaintiffs in this case to set forth allegations of Rule 3002.1 violations in this adversary proceeding. In *Tollstrup*, the court found that the mortgagee violated Rule 3002.1(b) by providing inaccurate information in its Notice of Mortgage Payment Change and therefore, the mortgagee was subject to the sanctions described in Rule 3002.1(i).  The portion of *Tollstrup* that Defendant relies on is merely the court's explanation as to why the debtor was not entitled to compensatory damages, an issue this Court discusses below.[220]

The debtor in *Tollstrup* sought several remedies, including evidence preclusion, attorney's fees and costs, and punitive damages.[221]  The debtor additionally asked the court to find the correct amount of the future monthly payments, that the debtor was current on his mortgage payments, that the debtor owed no fees, costs, or charges to the mortgagee, and that the escrow was "in

---

[218] FED. R. BANKR. P. 3002.1(i)(2).
[219] *Trevino v. HSBC Mortg. Servs. (In re Trevino)*, 535 B.R. 110, 127 (Bankr. S.D. Tex. 2015) (citing FED. R. BANKR. P. 7001(1)).
[220] 2018 Bankr. LEXIS 767, at *9–11.
[221] *Id.* at *7–8.

balance with no shortage or excess due."[222]  The court noted that due to a previous finding, most of the debtor's request were no longer relevant and thus, the court would focus solely on the request for attorney's fees and punitive damages.

In discussing which sanctions are appropriate under the Rule, the court said that Rule 3002.1 "is akin to a mandatory discovery or other disclosure requirement.  It is not a substantive debtor-protection requirement analogous to the automatic stay or discharge injunction."[223]  Citing to 28 U.S.C. § 2075,[224] the court concluded that because Rule 3002.1 is a procedural rule and procedural rules "cannot create independent causes of action that are unavailable under applicable substantive law[,]" the Rule does not create "a freestanding, substantive right to recover damages for an injury[,]" and thus, the debtor was not entitled to compensatory damages.[225]  The court permitted the debtor to move forward with a request for costs and attorney's fees.[226]

Plaintiffs here, just as the debtor in *Tollstrup*, seek to impose sanctions against Defendant for allegedly violating Rule 3002.1(b) and (c).  What sanctions this Court may impose under the Rule is a different question.  It does not change the fact that *Tollstrup* recognizes that a debtor may allege a violation of the Rule and that a mortgagee may be sanctioned under Rule 3002.1(i) for such violations.  Thus, this Court need not decide whether Rule 3002.1 creates a private federal cause of action.  Based on the plain language of the Rule and this Court's decision in *Trevino*, Plaintiffs may set forth their Rule 3002.1 violation in an adversary proceeding, and more specifically in this Complaint.

Accordingly, Defendant's Motion to Dismiss Plaintiffs' Count III on this basis is denied.

---

[222] *Id.*
[223] 2018 Bankr. LEXIS 767, at *9.
[224] 28 U.S.C. § 2075 provides: "The Supreme court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11.  Such rules shall not abridge, enlarge, or modify any substantive right."
[225] 2018 Bankr. LEXIS 767, at *11–12.
[226] *Id.* at *14.

### b. Plaintiffs' Count III for Rule 3002.1 violations committed in the 2011 Case is appropriate in this case

Defendant also argues that it is improper for Plaintiffs to seek damages for alleged violations of Rule 3002.1 occurring in the 2011 Case in a subsequent, unrelated adversary action.[227]  In support, Defendant points to the plain language of the Rule itself: "the court may . . . preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding *in the case*[,]" which does not indicate that relief may be sought in a case other than the bankruptcy case in which the violation occurred.[228]  Defendant also points to the Advisory Committee Notes of Rule 3002.1, which states:

> If, after the chapter 13 debtor has completed payments under the plan and the case has been closed, the holder of a claim secured by the debtor's principal residence seeks to recover amounts that should have been but were not disclosed under this rule, *the debtor may move to have the case reopened in order to seek sanctions* against the holder of the claim under subdivision (i).[229]

Plaintiffs do not address this argument in their Response.[230]

While the advisory committee note makes clear that a debtor may move to reopen a case to seek sanctions under Rule 3002.1(i), nothing in the note prevents a debtor from bringing a Rule 3002.1 violation in a subsequent case.  More importantly, this Court is unpersuaded that the plain language of Rule 3002.1 prevents a debtor from seeking "appropriate relief, including reasonable expenses and attorney's fees caused by the failure[,]" in a subsequent case.[231]  The Rule expressly permits the court to preclude the claim holder from presenting omitted information in "the case" in subsection (i)(1), but the Rule is silent as to whether the court can award relief in a later case.

---

[227] ECF No. 34 at 20–21.
[228] *Id.* (emphasis added) (citing FED. R. BANKR. P. 3002.1(i)(1)).
[229] FED. R. BANKR. P. 3002.1 advisory committee's note to 2011 adoption (emphasis added).
[230] ECF No. 37 at 17–18.
[231] FED. R. BANKR. P. 3002.1(i)(2).

This Court resists reading words into the Rule that do not appear there.[232]  Thus, this Court looks to case law to determine whether Plaintiffs' Count III is appropriate in the instant case.

Neither party identified any case wherein the court held that a debtor could or could not seek relief for a Rule 3002.1 violation in a subsequent bankruptcy case.  A review of case law reveals that there is one, non-binding case—*Finley*—wherein the bankruptcy court held that "claims for damages that arose during an active chapter 13 case must be pursed [sic] in an adversary proceeding filed in the case in which the violation or the other wrongful act occurred[.]"[233]  In *Finley*, the debtor had filed three chapter 13 bankruptcy cases, one each in 2008, 2012, and 2015.  The 2008 and 2012 cases were dismissed, but there was a pending adversary proceeding in the 2008 case.  In that adversary proceeding, the court awarded the defendant partial summary judgment.  Thereafter, the debtor filed a motion to supplement her complaint to add claims, including alleged violations of Rule 3002.1.  Although the alleged violations occurred in the 2012 case, the debtor attempted to bring the Rule 3002.1 violations in the 2008 adversary proceeding, arguing that the defendant's conduct in the 2012 case was an extension of the conduct at issue in the 2008 case.

The *Finely* court denied the debtor's motion to supplement and limited the claims to events occurring during and with respect to the 2008 case.  Using the debtor's stay violation claim as an example, the court explained that a stay violation in a previous case could be brought in a subsequent case if, for example, a creditor violated the stay by foreclosing on a debtor's property without obtaining stay relief, because then the debtor could raise a stay violation arguing that the sale was void and the property purportedly sold at the foreclosure sale was property of the estate in the

---

[232] *See Bates v. United States*, 522 U.S. 23, 29 (1997) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face.").

[233] *Finley v. Carrington Mortg. Servs., LLC (In re Finley)*, 2016 Bankr. LEXIS 406, at *12 (Bankr. N.D. Ala. Feb. 9, 2016).

subsequent case.[234]   However, the court concluded, "[c]laims seeking money damages for stay violations are in the nature of contempt for disobeying a court's order, and must be pursued in the case in which that order, e.g. the stay, was issued and not in a subsequent case or independent action" and cited to Rules 3001(c)(2)(D)(i)–(ii) and 3002.1(i)(1)–(2).[235]

In all other cases, the debtor either moved to reopen the bankruptcy case to assert a Rule 3002.1 violation after the debtor received a discharge and the case was closed,[236] or the debtor's prior bankruptcy case was dismissed, and the debtor brought the alleged violations in a subsequent case based on violations in both the prior and subsequent cases.[237]   None of those cases discussed whether a debtor could bring a Rule 3002.1 violation in a subsequent bankruptcy case for violations occurring solely in the prior case, where the debtor previously received a discharge and the case was closed.   Additionally, the allegations here are dissimilar to those in *Finley* in one important respect:   Plaintiffs' Complaint alleges that Defendant's violations of Rule 3002.1 in the 2011 Case prevent it from collecting the payments and fees it seeks to collect in the present case, in part because Defendant misapplied funds in the previous case based on the undisclosed changes in payment.[238]   Thus, Plaintiffs are seeking relief for continuing harm from Defendant's alleged violations of Rule 3002.1.

---

[234] *Id.* at *12–13.

[235] *Id.* at *13 & n.8.

[236] *E.g.*, *Meyer v. Wells Fargo Bank, N.A. (In re Meyer)*, 2018 Bankr. LEXIS 1041, at *2 (Bankr. M.D. Pa. Apr. 4, 2018) (debtor received a discharge in her chapter 13 case and later filed a motion to reopen that case to allege, inter alia, that the creditor violated Rule 3002.1); *In re Longmire*, 2015 Bankr. LEXIS 3086, at *1, *5 (Bankr. W.D. Tenn. Sept. 11, 2015) (same); *Bivens v. New Rez LLC (In re Bivens)*, 625 B.R. 843, 846–47 (Bankr. M.D. N.C. 2021) (same); *Beiter v. Chase Home Fin., LLC (In re Beiter)*, 590 B.R. 446, 449 (Bankr. S.D. Ohio 2018) (same); *In re Polvorosa*, 621 B.R. 1, 2, 8, 16 (Bankr. Nev. 2020) (debtor brought a motion for contempt, which implicated Rule 3002.1 and the court found that relief under Rule 3002.1 was not appropriate).

[237] *E.g.*, *In re McCants*, 626 B.R. 80, 81 (finding that the creditor's claim survived after dismissal of the debtor's first bankruptcy case regardless of the creditor's failure to provide the Rule 3002.1 notice and the creditor's claim in the debtor's second bankruptcy case was not disqualified under Rule 3002.1).

[238] ECF No. 21 at 23–24, ¶¶ 102–103, 107, 109 (arguing that (1) because Defendant failed to file 3002.1(b) Notices of Payment Change in the 2011 Case, the purported payment changes are not enforceable against Plaintiffs; (2) Defendant misapplied payments made during the 2011 Case based on the undisclosed increases in Plaintiffs' monthly mortgage; (3) Defendant failed to file notices regarding fees, expenses, and other costs and cannot now collect on

Defendant's accounting errors in this case, Plaintiffs allege, stem from errors made in the 2011 Case.[239]  For example, Plaintiffs' allege that Defendant's 410a attachment to its Claim No. 9-3 reflects Defendant's increase of the mortgage payment to $1,454 without the requisite Rule 3002.1(b) notice, which remained on Defendant's books until March 1, 2017.[240]  The 410a attachment also contains fees and costs that were allegedly unnoticed in the 2011 Case, but that Defendant now seeks to recover.[241]  Taking these allegations as true, Defendant committed accounting errors in the 2011 Case and is carrying those errors forward to its Claim No. 9-3.  Those errors are impacting Plaintiffs' reorganization efforts in the present case.  There is no binding authority on Rule 3002.1 that prohibits Plaintiffs from now seeking damages resulting from Defendant's alleged Rule 3002.1 violations in the prior case, particularly where Defendant is bringing allegedly improper payment change adjustments, accounting errors, and fees from the 2011 Case into the present case.

Accordingly, Plaintiffs may now, in their Complaint, bring the Rule 3002.1 violations from the 2011 Case.

### c.  Rule 3002.1(i) permits the award of sanctions and punitive damages if merited

Defendant argues that nothing in Rule 3002.1(i) indicates that "other appropriate relief" includes punitive monetary sanctions and moves to dismiss that request.  Defendant again cites to *Tollstrup* wherein the court found that Rule 3002.1 does not permit the imposition of punitive monetary sanctions.[242]  Plaintiffs argue that the advisory committee notes to Rule 3002.1 and this

---

those omitted charges).
[239] *Id.* at 11–12, ¶ 52.
[240] *Id.* at 17–18, ¶ 81.
[241] *Id.* at 17, ¶ 80.
[242] ECF No. 34 at 21 (citing 2018 Bankr. LEXIS 767, at *13).

Court's decision in *Trevino II* permit punitive damages.[243]   Before addressing Defendant's argument, this Court corrects Plaintiffs' mischaracterization of this Court's *Trevino II* opinion.

Plaintiffs' assertion that *Trevino II* supports the proposition that sanctions and/or punitive damages for violations of Rule 3002.1 and attendant abuse of the bankruptcy processes are appropriate is somewhat misleading.  In *Trevino II*, this Court found that "the Plaintiffs' abuse of process claim and request for reasonable and necessary attorney's fees and expenses in relation thereto should be granted in an amount to be determined by this Court."[244]  While that finding followed a discussion of the defendants' "actions, or lack thereof" regarding Rule 3002.1, the finding was solely as to the abuse of process claim under § 105(a).[245]  This Court also found that the plaintiffs were entitled to punitive damages on their abuse of process claim, again under § 105(a).[246]

The plaintiffs in *Trevino II* did not request sanctions and punitive damages under Rule 3002.1(i) and therefore, this Court never reached that issue.[247]  The plaintiffs did request reasonable, necessary fees and expenses under Rule 3002.1(i) and that request was denied because the plaintiffs alleged that the defendants Rule 3002.1 notice was incorrect, not that the defendants failed to provide notice.  In denying that request, this Court explained that "Rule 3002.1(i) provides relief in situations involving a lack of notice, rather than incorrect notice."[248]  Thus, after *Trevino II*, whether a court can assess sanctions and punitive damages under the Rule remained an open question.  The Court considers that question now.

> **i.  The Second Circuit's *Gravel* opinion**

---

[243] ECF No. 21 at 18 (citing *Trevino v. HSBC Mortg. Servs. (In re Trevino)*, 615 B.R. 108, 128, 130–31 (Bankr. S.D. Tex. 2020)).
[244] *In re Trevino*, 615 B.R. at 131.
[245] *Id.* at 128–31.
[246] *Id.* at 145.
[247] *Id.* at 149.
[248] *Id.* at 146.

Although neither party here had the benefit of *Gravel* when Defendant's Motion was filed because it wasn't decided until August 2, 2021, this Court finds the dissenting opinion instructive. *Gravel* is the first circuit level opinion to decide the issue of punitive damages under Rule 3002.1.[249]  And, as noted there, only two bankruptcy courts have considered the issue.[250]  *Gravel* vacates one of those decisions and the other is *Tollstrup*, cited by Defendant.[251]

In *Gravel*, the chapter 13 trustee moved for sanctions against a mortgagee for violations of Rule 3002.1 in three separate cases.[252]  After a consolidated hearing, the bankruptcy court granted the trustee's motions, ordering the mortgagee to pay $75,000 in punitive damages for violations of Rule 3002.1 and an additional $300,000 for violations of the court's orders pursuant to its § 105 powers.[253]  The bankruptcy court "levie[d] this substantial penalty on [the mortgagee] to convey a clear message to [the mortgagee], and other mortgage creditors, that they may not violate court orders with impunity and will suffer significant monetary sanctions if they conduct their mortgage accounting operations in a manner that fails to fully comply with Rule 3002.1, violates court orders, or threatens the fresh start of Chapter 13 debtors."[254]

Both sanctions were vacated by the district court.[255]  The district court remanded the matter, noting that the bankruptcy court could either refer the matter for criminal contempt proceedings or sanctions or could take steps to enforce its orders short of punitive sanctions of the scope and type imposed in the cases.[256]  On remand, the bankruptcy court imposed the same $75,000 sanction for

---

[249] *PHH Mortg. Corp. v. Sensenich (In re Gravel)*, 2021 U.S. App. LEXIS 22752, at *18 (Aug. 2, 2021).
[250] *Id.*
[251] *Id.*
[252] *Id.* at *5–7.
[253] *Id.* at *7.
[254] *In re Gravel*, 556 B.R. 561, 580 (Bankr. D. Vt. 2016), vacated and remanded sub nom. *PHH Mortg. Corp. v. Sensenich*, 2017 U.S. Dist. LEXIS 207801 (D. Vt. Dec. 18, 2017).
[255] *PHH Mortg. Corp.*, 2017 U.S. Dist. LEXIS 207801, at *24–25 (D. Vt. Dec. 18, 2017).
[256] *Id.* at *25.

the violations of Rule 3002.1 and reduced the $300,000 sanction by 25%.[257]   The mortgagee appealed to the district court, but the trustee requested that the bankruptcy court certify its order for the direct review of the Second Circuit Court of Appeals.[258]   That request was granted and the trustee petitioned to the Second Circuit, which granted review.[259]

### a.   The majority's opinion

Relevant to the instant case, by a 2-1 decision the circuit court vacated and reversed the $75,000 punitive damages award for violations of Rule 3002.1.[260]   The majority's first basis for vacating the sanction was that the phrase "other appropriate relief" in Rule 3002.1(i)(2) is a general phrase among specific examples and should be "construed in a fashion that limits the general language to the same class of matters as the things illustrated."[261]   Reasonable attorney's fees and expenses, that "expressly remedy harms to the debtor 'caused by the [creditor's] failure,' to give notice of a claim[,]" the majority reasoned, are compensatory forms of relief, suggesting that "other appropriate relief" is limited to non-punitive sanctions.[262]   Likewise, the relief set forth is subdivision (i)(1), the majority continued, is not a punishment because it permits the court to prevent the creditor from collecting an un-noticed amount only if the non-compliance caused harm, "serv[ing] the remedial goal of shielding the debtor from unforeseen charges," so that the debtor's fresh start is not later disrupted.   Thus, the court concluded, subdivision (i)(1) reinforces the inference that "other appropriate relief" is limited to non-punitive sanctions.[263]

---

[257] *In re Gravel*, 2021 U.S. App. LEXIS, at *9.
[258] *Id.*
[259] *Id.* at *26–27.
[260] *Id.* at *26–27.
[261] *Id.* at *19 (quoting *Canada Life Assurance Co. v. Converium Ruckversicherung (Deutschland) AG*, 335 F.3d 52, 58 (2d Cir. 2003)).
[262] *Id.*
[263] *Id.* at *20.

The majority's second basis for vacating the $75,000 sanction was that in contrast with Rule 3002.1(i), there are sections of the Bankruptcy Code—namely § 362(k)(1)—that explicitly provide for punitive damages in appropriate circumstances.[264]  The majority also disagreed with the bankruptcy court's reasoning that the mere preclusion of evidence and award of attorney's fees would be insufficient to deter violations of Rule 3002.1, drawing an analogy to discovery sanctions pursuant to FRCP 37.[265]  Finding the analogy unpersuasive, the majority reasoned that discovery sanctions under FRCP 37 are meant as deterrents to punish recalcitrant or evasive parties for the protection of the interests of the parties, the court, and the public in a speedy and just resolution of the case.[266]  Contrarily, Rule 3002.1 solely aims to protect the debtor's interest.  FRCP 37, the majority continued, permits imposition of a range of sanctions, including "further just orders."[267]  Rule 3002.1 does not authorize "just orders."[268] The majority concluded that "[t]he sanction was imposed under Rule 3002.1(i), and our holding is that the sanction went beyond the relief authorized by that rule."[269]

### b.  The dissent's opinion

The dissenting judge disagreed, concluding that "the plain meaning of 'other appropriate relief' under Rule 3002.1, as confirmed by its modeling after both [FRCP] 37 and that Rule's purpose, authorizes a bankruptcy court to use its discretion to impose punitive monetary sanctions in appropriate circumstances for violations of Rule 3002.1."[270]  The dissent began with the plain language of Rule 3002.1(i).  Focusing on the word "including," the dissent noted that pursuant to

---

[264] *Id.* (citing 11 U.S.C. § 362(k)(1) ("[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.")).
[265] *Id.* at *20–21.
[266] *Id.* at *21.
[267] *Id.* at *22.
[268] *Id.*
[269] *Id.* at *23.
[270] *Id.* at *30, *50–51.

11 U.S.C. § 102(3) subdivision (i)(2) should be interpreted to mean "including, but not limited to" compensatory relief.[271]

Next, the dissent pointed out that the classification by the majority of the evidence-preclusion in (i)(1) as a "non-punitive sanction" is inaccurate because such preclusion is not designed to be proportionate to the harm caused, but rather is meant to deter future violations of Rule 3002.1.[272] As the Second Circuit noted in another context, "the preclusion of evidence can be a *more extreme* sanction than monetary sanctions" and is particularly important because of its punitive nature and deterrent effect.[273] Thus, the dissent deduced, the evidence-preclusion provision of Rule 3002.1(i) "is properly classified as a potentially punitive sanction that also operates as a deterrent."[274] Relying on the "same class of matters" canon employed by the majority, "other appropriate relief" necessarily includes punitive monetary sanctions because evidence preclusion is a punitive sanction meant to deter.[275]

The dissenting opinion also compared Rule 3002.1 to FRCP 37(c)(1), after which the Rule was modeled.[276] In relevant part, FRCP 37(c)(1) contains an evidence-preclusion sanction and states that if a party fails to adhere to FRCP 26(a) or (e), then the court: "(A) may order payment of the *reasonable expenses including attorney's fees*, caused by the failure . . . and (C) may impose *other appropriate sanctions, including* any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."[277] And although the Second Circuit has never decided whether punitive damages can be assessed under FRCP 37, the dissent agreed with the majority of courts that they could be under the "other

---

[271] *See id.* at *35.

[272] *Id.* at *36–37.

[273] *Id.* at *37–38 (first citing *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979) then citing *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365-67 (2d Cir. 1991) finally citing *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976)).

[274] *Id.* at *38.

[275] *Id.* at *38–39 (citing *Canada Life Assurance Co.*, 335 F.3d at 58).

[276] *Id.* at *40–41.

[277] *Id.* at *40 (citing Fed. R. Civ. P. 37(c)(1) (emphases added)).

appropriate sanctions" language of the rule.[278]  Rule 3002.1(i)(2), the dissent continued, contains the same "other appropriate relief" language, which operates as a "catch-all provision" in both rules, intended to "cloak the court with the flexibility and discretion to impose unenumerated punitive sanctions[.]"[279]  The dissent disagreed with the majority's distinguishment between FRCP 37 and Rule 3002.1 on the basis that the former protects the parties, the court, and the public whereas the latter solely protects the debtor.  While Rule 3002.1 protects the debtor, it is equally important to the bankruptcy courts and the public who have an interest in ensuring that the "fresh start" objective of the Bankruptcy Code is not undermined, and that speedy and just resolutions of chapter 13 cases take place.[280]

Lastly, the dissent considered the purpose behind the enactment of Rule 3002.1.[281]  Prior to Rule 3002.1, mortgagees, without notice to the debtor, would add fees and costs to the debtor's mortgage during the pendency of the bankruptcy case.[282]  After the bankruptcy case ended, mortgagees attempted to foreclose on debtors based on those post-petition defaults for which they assessed fees.[283]  Rule 3002.1 was adopted to remedy that problem by requiring the mortgagee to give both the debtor and the trustee notice of fees and payment changes during the bankruptcy case.[284]  To limit the remedies permitted under Rule 3002.1 to compensatory awards would likely render that provision an insufficient deterrent, where the fees assessed by mortgagees are often relatively small and either go unnoticed by debtors or debtors choose not to fight them.[285]  Without the possibility of punitive damages, mortgagees have little incentive to make the systemic changes

---

[278] *Id.* *40–41.
[279] *Id.* at *42.
[280] *Id.* at *49.
[281] *Id.* at *42–50.
[282] *Id.* at *43.
[283] *Id.*
[284] *Id.*
[285] *Id.* at *47–49 (citing Nat'l Assoc. of Chapter 13 Trs. Amicus Br. at 5–6, 15).

required to service loans properly in chapter 13.[286]  For those reasons, the dissent concluded that

Rule 3002.1(i)(2) permits bankruptcy courts to use their discretion to impose punitive monetary

sanctions.[287]

### ii. The plain language of Rule 3002.1(i) and the policies underlying the Bankruptcy Code permit punitive damages and sanctions as "other appropriate relief" under Rule 3002.1(i)(2)

This Court respectfully disagrees with the majority and agrees with the dissent.  The plain

language of Rule 3002.1(i) places few restrictions on the types of remedies bankruptcy courts can

issue.  First, under subdivision (i)(1), a court is only prohibited from precluding evidence if the

creditor's failure was substantially justified or harmless.  Second, under subdivision (i)(2), the

relief the court can award is only limited to that which is "appropriate."  Thus, the plain language

of Rule 3002.1(i) provides courts significant latitude in awarding sanctions.  Additionally, as dis-

cussed by the dissent in *Gravel*, the word "including," as used in the Rule, is not limiting.[288]  Rea-

sonable expenses and attorney's fees are merely two examples, not an exhaustive list.

Beyond the plain language, this Court cannot conclude from the enumerated examples in

(i)(2) that courts should be limited to compensatory relief.  Evidence preclusion is a particularly

harsh punitive sanction, warranted only under rare circumstances.[289]  Reasonable expenses and

attorney's fees do not conclusively establish that only compensatory awards are appropriate either.

The explicit mention of attorney's fees is necessary for courts to depart from the American Rule

---

[286] *Id.*

[287] *Id.* at *50–51.

[288] 11 U.S.C. § 102(3).

[289] *See, e.g., Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 2012 U.S. Dist. LEXIS 166238, at *36 (S.D. Tex. Nov. 21, 2012 ("While Rule 26 violations may warrant evidence preclusion, it is, or can be, a harsh sanction.") (reversed on other grounds), *aff'd in part, rev'd in part*, 775 F.3d 242 (5th Cir. 2014); *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988) ("The harshest sanctions available [under FRCP 37] are preclusion of evidence and dismissal of the action"); *R & R Sails, Inc. v. Ins. Co. of the Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012) ("Yet evidence preclusion is, or at least can be, a harsh sanction.") (cleaned up).

when considering fee shifting[290] and therefore provides little indication as to how courts should interpret "other appropriate relief."

Permitting sanctions and punitive damages as "other appropriate relief" under Rule 3002.1(i)(2) also best serves the policy goals underlying the bankruptcy system.  It is well recognized that a creditor's failure to comply with the notice requirements of Rule 3002.1 can hinder the honest debtor's right to a fresh start following bankruptcy.[291]  Punitive damages protect that right by deterring violations of the Rule that threaten a fresh start.  Punitive damages could likewise curtail repeat bankruptcy filings, thereby conserving both judicial resources and the parties' resources.  Where the debtor's fresh start is defiled by Rule 3002.1 violations, the likelihood of a subsequent bankruptcy filing is greater than zero.  This case serves as an example.  Plaintiffs allege that throughout their 2011 Case they paid $1,197 as designated in their 2011 Plan and as ordered by this Court, but Defendant repeatedly changed the payment amount—from $1,276 to $1,195 to $1,454—and added fees and costs without notice.[292]  Those occurrences, in conjunction with others, caused accounting errors that resulted in Defendant sending default notices to Plaintiffs beginning August 31, 2017, before Plaintiffs received their discharge in the 2011 Case.[293]  Shortly after Plaintiffs received their discharge, they became frustrated by Defendant's post-discharge activity and stopped making payments on the mortgage.[294]  Defendant continued to send delinquency notices and eventually sought foreclosure.[295]  Plaintiffs filed the instant bankruptcy case to halt

---

[290] *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) ("We have recognized departures from the American Rule only in 'specific and explicit provisions for the allowance of attorneys' fees under selected statute.") (*quoting Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 260 (1975)).

[291] *See, e.g.*, *In re Tavares*, 547 B.R. at 214 (recognizing that the creditor's failure to following Rule 3002.1 can defile a debtor's fresh start with a surprise attack at the conclusion of the case); *In re Rivera*, 599 B.R. 335, 342 (Bankr. D. Ariz. 2019) ("The Rule is a 'procedural mechanism designed to effectuate the Chapter 13 policy of providing debtors with a fresh start.'") (quoting *In re Thongta*, 480 B.R. 317, 319 (Bankr. E.D. Wis. 2012)).

[292] ECF No. 21 at 17–18, ¶ 81.

[293] *Id.* at 17, ¶ 77.

[294] *Id.* at 15–16, ¶ 71.

[295] *Id.* at 17, ¶ 78.

foreclosure.[296]  Taking those allegations as true, Plaintiffs' fresh start was spoiled, in part, by Defendant's violations of Rule 3002.1, resulting in Plaintiffs once again knocking on the courtroom door.

Moreover, the consumer bankruptcy process "is vulnerable to opportunistic behavior" and "[s]ome repeat players - large lenders and servicers with thousands of borrowers in bankruptcy - may take advantage of the lack of direct oversight to extract undue benefits from the bankruptcy system."[297]  Under the appropriate circumstances, courts may use punitive sanctions to curb opportunistic behavior.  As Kara Bruce explains in her article:

> Even if a consumer is aware that her rights have been violated, the damages available to that individual consumer are often too small to justify the costs of litigating a matter.  These include not only direct costs (hiring an attorney and paying filing fees, for example), but also the time and effort it takes to locate an attorney, confirm that a legal claim exists, and commence suit.  Even if a consumer can surmount these hurdles, the amount she is able to invest in a suit might well be dwarfed by the investment of a company that profits from perpetuating the harm on similarly situated consumers.  These financial barriers to private litigation can theoretically be addressed by the imposition of litigation incentive, such as statutory or punitive damages, fee-shifting rules, and damage multipliers.[298]

The dissent in *Gravel* echoes this sentiment.  Costs and attorney's fees alone may be an insufficient deterrent because the fees and charges that violate Rule 3002.1 may either go unnoticed by the debtor or the debtor will find it easier to pay the small fees rather than litigate them.[299]  This permits Rule violators to escape sanction altogether.[300]  It is precisely because many of the fees that violate Rule 3002.1 are small that punitive damages should be levied in the appropriate case.

---

[296] *Id.* at 4, ¶ 5.
[297] Kara Bruce, *Closing Consumer Bankruptcy's Enforcement Gap*, 69 Baylor L. Rev. 479, 480 (2017).
[298] *Id.* at 502–03.
[299] *In re Gravel*, 2021 US App LEXIS at *47.
[300] *Id.*

Accordingly, sanctions and punitive damages may be assessed under Rule 3002.1(i)(2) as "other appropriate relief" where circumstances warrant.  Plaintiffs must nevertheless satisfy their evidentiary trial burden to prove they are entitled to such relief.

### d.  Plaintiffs have no duty to allege harm under Rule 3002.1(i)

In the alternative, Defendant moves to dismiss Plaintiffs' Count III on the bases that (1) Plaintiffs have not alleged that they suffered harm as a result of Defendant's alleged Rule 3002.1 violations; and (2) elimination of a lien or of any contractual obligations is not an appropriate remedy under Rule 3002.1(i)(2).  Plaintiffs' Complaint seeks actual damages, attorneys' fees and costs, and any other appropriate relief, including substantial punitive damages and/or sanctions.[301] Plaintiffs' Count III does not ask this Court to "eliminate" Defendant's lien or any contractual obligations.[302]  The Complaint asks this Court to award "other appropriate relief," but does not specify what that relief might be.[303]  At this stage in  the proceeding, this Court will not assume that Plaintiffs' general request is a request to "eliminate" the lien or any contractual obligations.

Accordingly, Defendant's request to dismiss on the basis elimination of a lien or of any contractual obligations not being an appropriate remedy under Rule 3002.1(i)(2) is denied.

Additionally, Rule 3002.1 does not require Plaintiffs to allege harm to be entitled to "other appropriate relief, including reasonable expenses and attorney's fees"[304] and Defendant provides no support for its claim that the Rule does.  Rule 3002.1(i) says that a court *may* either preclude the holder of a claim from presenting the omitted information as evidence or award other appropriate relief or both.  The use of "may" indicates that a court has discretion.[305]  The plain language

---

[301] ECF No. 21 at 25, ¶ 114.
[302] *Id.* at 22–25, ¶¶ 97–114.
[303] *Id.* at 25, ¶ 114.
[304] FED. R. BANKR. P. 3002.1(i)(2).
[305] *Jama v. Immigration & Customs Enf't*, 543 U.S. 335, 346 (2005).

of the Rule imposes three restrictions on that discretion: (1) the court must provide notice and a hearing; (2) to preclude evidence, the court must determine that the failure to comply with the Rule caused harm and was not substantially justified; and (3) "other relief" must be appropriate.[306]

The second restriction does not apply to the court's discretion to award other appropriate relief, including reasonable expenses and attorney's fees under subdivision (i)(2). Rule 3002.1(i) does not require courts to find that harm was caused by a claim holder's failure to adhere with the notice requirements of the Rule.[307] The decision to impose sanctions rests solely with the court, after notice and hearing.[308] This does not mean that the court is prohibited from considering whether the failure was substantially justified or caused harm. It simply means that such consideration is not required when considering "other appropriate relief."

However, even if the Rule required Plaintiffs to demonstrate harm, Plaintiffs' Complaint pled facts from which this Court can make a reasonable inference that Defendant's conduct harmed Plaintiffs. Plaintiffs allege that because Defendant failed to provide notice of the payment changes, Plaintiffs were stripped of the opportunity to object to those changes.[309] Plaintiffs also allege that Defendant misapplied payments based on the unnoticed payment changes and fees, sent numerous delinquency notices, and eventually sought foreclosure, causing Plaintiffs to seek bankruptcy relief.[310] Plaintiffs' admission that they stopped making payments to Defendant after November 2018 has no bearing on whether Defendant's alleged violations caused them harm.

Accordingly, this Court finds that Rule 3002.1(i)(2) does not require Plaintiffs to plead harm and, even if it did, Plaintiffs have pled a plausible claim for relief.

---

[306] FED. R. BANKR. P. 3002.1(i).
[307] *Id.*; *see also Meyer v. Wells Fargo Bank, N.A. (In re Meyer)*, 2018 Bankr. LEXIS 1041, at *33 (Bankr. M.D. Pa. Apr. 4, 2018).
[308] See Note 307 *supra*.
[309] ECF No. 21 at 23, ¶ 101.
[310] *Id.* at 1, 24–25, ¶¶ 77–79, 109–110.

### 3. Plaintiffs' Counts V–VIII

Finally, Defendant posits that Plaintiffs have not sufficiently alleged harm or damages resulting from Defendant's alleged violations for Plaintiffs' Counts V through VIII.  For each of these counts, Plaintiffs request that the Court impose monetary sanctions against Defendant.[311] Defendant, in sum, asserts that while Counts V–VIII of Plaintiffs' Complaint allege wrongful conduct based on Defendant's alleged misapplication of payments, Plaintiffs do not allege facts that, taken as true, demonstrate that Defendant's violation of the chapter 13 plan, the automatic stay, the discharge injunction, or the other Court orders in the 2011 Case caused any actual damages.[312] As such, Defendant asks this Court to dismiss Counts V–VIII.

Counts V–VIII are based on a core set of allegations summarized here.  Plaintiffs' Complaint alleges that: (1) Defendant failed to bring its books and records in accordance with this Court's Deem Current Order in the 2011 Case, continuing to assess a balance of $3,885.93 in fees and charges, $1,072.17 in an unapplied funds balance, and $1,716.03 in a negative escrow balance; (2) Defendant increased the monthly mortgage payment to $2,012 on March 1, 2017, and assessed that balance, plus corresponding accruals of interest, escrow deficiencies, and other such fees based on the $2,012 rate until September 4, 2020, when Defendant lowered the monthly mortgage amount to $1,453.39 without explanation; (3) the increase to $2,012 was allegedly due to an increase in taxes or insurance, but Plaintiffs were paying the Property insurance themselves and the county tax entities reflect no increase in taxes on the Property for that period; (4) Defendant was paying insurance on a different property owned by Plaintiffs and improperly adding the insurance costs to the Property; (5) Defendant carried forward incorrect escrow deficiency amounts from the 2011 Case and then on September 4, 2019, credited that portion of Plaintiffs' mortgage account in

---

[311] *Id.* at 30, 32–34, ¶¶ 143, 154, 160, 166.
[312] ECF No. 34; ECF No. 21 at 29, ¶ 136.

the amount of $13,900.35 for an "insurance refund"; (6) Defendant assessed "Bankruptcy Fees" and "Bankruptcy Costs" totaling $2,150 to Plaintiffs' mortgage account on September 27, 2019, at a time when Plaintiffs were not in bankruptcy; and (7) Defendant assessed litigation costs against Plaintiffs after the Deem Current Order and the discharge were entered based largely on the wrongful assessment of an incorrect monthly payment amount that Plaintiffs were not contractually obligated to pay.[313]   The Court will consider each in turn.

### a.   Count V (Defendant's alleged violation of the plan and order confirming the plan)

Count V of Plaintiffs' Complaint alleges that Defendant "violated 11 U.S.C. § 1327 and other provisions of the Code and Rules, Plaintiffs' confirmed Chapter 13 plan, the orders confirming the plan, 11 U.S. C. § 541(i), and other motions, directives, and orders of the Court."[314]   The aforementioned Code sections are silent on the issue of damages.   Plaintiffs maintain that "under § 105 and/or the Court's inherent authority, Defendant should be sanctioned in an appropriate amount and made to pay Plaintiffs' reasonable attorneys' fees for bringing this action."[315]   Defendant objects, pointing out that under Count V, Plaintiffs are seeking a broad swath of damages, including "mental anguish, emotional distress, actual damages, nominal and incidental damages, mileage damages, reputational damages, lost equity, damage to credit, and attorneys' fees and costs."[316]   Defendant contends that Plaintiffs allege no facts evidencing specific harm as the result of Defendant violating any of the Court's Orders.   This Court disagrees.

A confirmed plan constitutes a new arrangement between the debtor and creditors and a claim may arise from the confirmed plan.[317]   Specifically, § 1327 binds the debtor and each creditor

---

[313] ECF No. 21 at 18–19, ¶¶ 82–86.
[314] *Id.* at 29, ¶ 137.
[315] *Id.* at 30, ¶ 143.
[316] ECF No. 34; ECF No. 21 at 30, ¶ 142.
[317] *In re Cano*, 410 B.R. 506, 524 (Bankr. S.D. Tex. 2009); *In re Stratford of Tex., Inc.*, 635 F.2d 365, 368 (5th Cir.1981).

to the provisions of a confirmed plan.[318]  Section 105 grants courts broad authority to enter any

order or judgment "necessary or appropriate to carry out the provisions" of the Bankruptcy

Code.[319]  Courts have used this broad authority to remedy violations of confirmed plans.[320]  A

bankruptcy court's authority under § 105 to enforce its own orders cannot be reasonably ques-

tioned.[321]  As such, allowing debtors to seek damages for violations of court orders confirming

chapter 13 plans enforces rights.[322]  This use of § 105 is a remedy to enforce rights incorporated

by the confirmed plans.

Accordingly, application of the Court's § 105 power to provide some or all the remedies

sought by Plaintiffs may be appropriate if Plaintiffs prove the facts pled.[323]

Plaintiffs pled that "[Defendant] failed to apply Plaintiffs' payments to their mortgage loan

account in the correct amounts and/or applied payments to improper and undisclosed fees and

expenses in violation of bankruptcy law."[324]  Plaintiffs' Complaint outlines the discrepancies be-

tween the amounts set forth in this Court's Agreed Order[325] in the 2011 Case and the proof of

claim filed by Defendant encompassing the same time period.[326]  Count V repeats and realleges

the other allegations in the Complaint, which outline the payment misapplications relating to

---

[318] 11 U.S.C. § 1327.
[319] *Id.* § 105(a).
[320] *In re Cano*, 410 B.R. 506, 540 (Bankr. S.D. Tex. 2009).
[321] *Id.*; *Am. Airlines Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir.2000) ("Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complaint for losses sustained.") (quoting *U.S. v. United Mine Workers of Am.*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 91 L.Ed. 884 (1947)); *Musslewhite v. O'Quinn (In re Musslewhite)*, 270 B.R. 72, 79 (S.D.Tex.2000) ("The Bankruptcy Court's finding of civil contempt and that Court's exercise of discretion to impose sanctions to compensate O'Quinn for Debtor's repeated and blatant violations of the Bankruptcy Court's various orders are not clearly erroneous."); *Sanchez v. Ameriquest Mortgage Co. (In re Sanchez)*, 372 B.R. 289, 317 (Bankr.S.D.Tex.2007) (holding that "the Defendant has violated the Court's order approving the Amended Plan, and the Defendant may be sanctioned for civil contempt"); *Tate v. NationsBanc Mortgage Corp. (In re Tate)*, 253 B.R. 653, 669 (Bankr.W.D.N.C.2000); *In re Padilla*, 379 B.R. at 643 (the court considered the extent to which the Bankruptcy Code provides relief for violations of an order confirming a plan.
[322] *In re Cano*, 410 B.R. at 541.
[323] *Id.*
[324] ECF No. 21 at 29, ¶ 136.
[325] *Id.* at 12–13, ¶¶ 55 –57; *see* 11-70475, ECF No. 91.
[326] *Id.* at 17–19, ¶¶ 80–86.

undisclosed fees and expenses that Defendant unlawfully charged to Plaintiffs' account.[327]  Plaintiffs state that "many of the fees, expenses, and other costs still carried on the books and records of Community are fees and expenses and costs it did not disclose in the [Plaintiffs'] 2011 Case but which were aggressively assessed in the intervening years between the two chapter 13 cases and which are now being used to collect in this case."[328]  In essence, Plaintiffs pled that Defendant's actions are in contravention of this Court's orders entered in the 2011 Case.  As stated by the court in *Cano*, "[t]he Court would be ignoring the plain congressional intent of § 105 and editing-out words from § 105 if the Court dismissed Plaintiffs' complaint at this early stage. The Court cannot yet discern what is necessary or appropriate. The story is yet to be told."[329]  The Court is not willing to foreclose the possibility that it may award damages should Plaintiffs prove up their case at trial, and Defendant is on more than sufficient notice to defend against such claims.

Accordingly, Defendant's Motion to Dismiss Plaintiffs' Count V is denied.

### b.  Count VI (willful violation of the automatic stay)

Under Count VI, Plaintiffs assert that Defendant's actions constitute willful violations of the automatic stay as set forth in 11 U.S.C. § 362(a)(3).  Defendant objects by pointing out that Plaintiffs allege only conclusory "damages as a result of Community's violation of the automatic stay."[330]  In response, Plaintiffs contend that Defendant violated the stay by (a) applying Plaintiffs' 2011 Plan payments to wrongful fees, (b) filing a proof of claim that included an alleged pre-petition escrow shortage and subsequently collecting monthly mortgage payments including the same amounts, (c) changing monthly mortgage payment amounts without filing a respective 3002.1(b) Notice of Payment Change, and (d) not bringing its books and records in conformity

---

[327] See *id.* at 17–19, 22–35, ¶¶ 80–86, 97–174.
[328] *Id.* at 24, ¶ 109 (Plaintiffs incorporated this portion of the Complaint into Count V).
[329] *In re Cano*, 410 B.R. at 543.
[330] ECF No. 34.

with this Court's Deem Current Order in the 2011 Case and continuing to assess a balance of $3,855.93 in fees and charges and ($1,072.17) in unapplied funds balance.[331]  Each allegation contained in Count VI of Plaintiffs' Complaint begins with "Community violated the stay in the Previous Case by . . . ."

Further, § 362(k)(1) delineates ". . . an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."[332]  Plaintiffs' Complaint states "Defendant is liable to Plaintiffs for Plaintiffs' actual damages, punitive damages, and reasonable attorneys' fees and costs caused by [Defendant's] willful stay violations. 11 U.S.C. § 362(k)."[333] Considering the facts set forth in the Complaint in conjunction with Plaintiffs' explicit request for damages modeled under the applicable statute, the Court finds that Plaintiffs pled enough to survive Defendant's Motion to Dismiss.

Accordingly, Defendant's Motion to Dismiss Plaintiffs' Count VI is denied.

### c.   Count VII (violation of the discharge injunction)

Plaintiffs' Count VII asserts that Defendant violated 11 U.S.C. § 524(i) by failing to properly apply funds received from the Plaintiffs and the chapter 13 trustee in accordance with the provisions of Plaintiffs' confirmed 2011 Plan.  Defendant objects, arguing that Plaintiffs' allegations that they "have suffered material injury due to Defendant's willful failure to credit Plaintiffs' payments pursuant to their confirmed plan in their previous bankruptcy case" and "have incurred damages, including attorneys' fees and out-of-pocket expenses, amongst others, and have suffered

---

[331] ECF No. 21 at 30–31, ¶¶ 147–150; *see also id.* ¶¶ 115–132 (describing allegedly unlawful and undisclosed charges assessed by Defendant, which allegations are repeated and realleged by reference in Count VI).
[332] 11 U.S.C. § 362(k)(1).
[333] ECF No. 21 at 32, ¶ 154.

emotional distress" are conclusory.[334]  Defendant contends that Plaintiffs do not allege facts that, if taken as true, would demonstrate that Defendant's violation of the discharge injunction caused any actual damages.[335]

> Section 524(i) provides that:
>
> The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

In essence, it provides a post-discharge remedy for debtors.[336]  Further, because the Court has the power to enforce its own orders, Plaintiffs are permitted to sue pursuant to § 105 for violations of the Court's orders and the § 524(i) discharge provision.[337]  As discussed *supra*, debtors who sue based on violations of court orders are simply asking the court to use the power granted by § 105 to enforce its own orders.[338]

Here, Plaintiffs allege that they suffered material injury because of Defendant's willful failure to credit Plaintiffs' payments pursuant to their confirmed 2011 Plan and because of Defendant's misapplication of payments.[339]  Plaintiffs contend that by failing to credit Plaintiffs' payments as required by the 2011 Plan, Defendant diverted such payments to amounts not actually owed under bankruptcy law, causing financial injury.[340]  Plaintiffs assert that Defendant's failure to comply with § 524(i) ultimately forced Plaintiffs to file the current bankruptcy case, causing them to incur additional attorneys' fees and pay additional fees to the chapter 13 trustee in

---

[334] ECF No. 34 at 24; *see* ECF No. 21 at 32–33, ¶ 159.
[335] ECF No. 34 at 24.
[336] *In re Parkman*, 589 B.R. 567, 577 (Bankr. S.D. Miss. 2018).
[337] *See In re Pompa*, 2012 WL 2571156, at *5 (Bankr. S.D. Tex. June 29, 2012).
[338] *Id.*
[339] ECF No. 37.
[340] ECF No. 21 at 32–33, ¶ 159.

connection with this case.[341]  Assuming the facts pled are true and incorporating the facts referenced herein, collection and failure to credit payments in the manner required in the 2011 Case may have caused injury to the Plaintiffs, entitling them to post-discharge relief.  At a minimum, Plaintiffs pled enough facts to have their day in court on this issue.

Accordingly, Defendant's Motion to Dismiss Plaintiffs' Count VII is denied.

### d.  Count VIII (contempt)

Plaintiffs' Count VIII asks this Court to find Defendant in contempt as a result of the alleged actions taken by Defendant referenced herein.[342]  In its Motion, Defendant cites to the proposition that "[s]anctions for civil contempt may be imposed for either of two purposes: (i) to coerce compliance with a court order or injunction; or (ii) to compensate for damages sustained because of the contemptuous conduct."[343]  Defendant argues that justification for an award of damages on a cause of action and an award of damages in the form of civil sanctions differ.[344]  According to Defendant, the justification for the former is conduct that violates a common law or statutory duty or promise, whereas the justification for the latter is conduct that violates a court order or injunction.  Defendant argues that sanctions for civil contempt for violating the automatic stay cannot be a substitute for damages available at law, and the remedy imposed by a court must have some connection between the harm alleged and the damages or remedy a plaintiff seeks to recover.  And so, the argument goes, because Defendant asserts that Plaintiffs are not seeking an order compelling Defendant to comply with the Court's previous orders and make no allegation that Defendant is still not in compliance with any order, this Count should be dismissed.

---

[341] *Id.*
[342] ECF No. 21 at 34.
[343] ECF No. 34; *In re Hester*, 554 B.R. 143, 147 (Bankr. N.D. Tex. 2016) (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947).
[344] ECF No. 34 at 23.

However, § 105 authorizing the court to issue any order necessary or appropriate to carry out the provisions of title 11 is not but a statutory codification and supplantation of bankruptcy courts' inherent civil contempt authority; bankruptcy courts have both inherent contempt authority and equitable authority under the statute.[345]  This Court will not inhibit its authority to make a finding of contempt.  It remains to be seen whether a finding is necessary or appropriate.  As pled, Plaintiffs' allegations are plausible enough to defeat the pending Motion to Dismiss.

Accordingly, Defendant's Motion to Dismiss Plaintiffs' Count VIII is denied.

## B.  Plaintiffs' Motion to Dismiss

Plaintiffs move to dismiss Defendant's Counterclaims I and II.  Plaintiffs assert that Defendant's Counterclaim I for breach of contract should be dismissed because (i) it is redundant and procedurally improper to bring the breach of contract claim in this proceeding;[346] (2) Defendant failed to satisfy the pleading requirements of FRCP 8(a) regarding damages;[347] and (iii) Defendant has not pled that the alleged breach was material.[348]  Plaintiffs also allege that Defendant's Count II fails to state a claim because Defendant has not pled facts showing that it is entitled to relief from the automatic stay and has not sufficiently pled that it is the holder of the Note and Deed of Trust.[349]

### 1.  Defendant's Counterclaim I (breach of contract)

Defendant's first counterclaim alleges that Plaintiffs breached section 2.4 of the Deed of Trust by failing to make the required payments as they became due, section 3.1 of the Deed of Trust by failing to maintain insurance on the Property from October 8, 2018, through September

---

[345] *In re Cano*, 410 B.R. 538–39 (first citing *In re Yorkshire*, 540 F.3d 328, 332 (5th Cir.2008) ("It is well-settled that a federal [bankruptcy] court, acting under inherent authority, may impose sanctions against litigants or lawyers. . . .") then citing *In re Jove Eng'g, Inc. v. IRS*, 92 F.3d 1539, 1553 (11th Cir. 1996)).
[346] ECF No. 36 at 6–9, ¶¶ 23–33.
[347] *Id.* at 2, ¶¶ 2–3.
[348] *Id.* at 7, ¶ 27.
[349] *Id.* at 2–3, ¶¶ 4–5.

23, 2019, and section 3.9 of the Deed of Trust by failing to maintain the Property in a good and safe condition of repair.[350]   Defendant further alleges that Plaintiffs breached section 18 of the Note and section 5.10 of the Deed of Trust by using the Property for personal purposes, rather than business purposes.[351]   Defendant alleges that it suffered actual damages and that Plaintiffs are $33,607.60 in arrears.[352]   Plaintiffs ask this Court to dismiss Defendant's Counterclaim I.

### a.   Defendant's counterclaim for breach of contract is not redundant or procedurally improper

Plaintiffs argue that Defendant's breach of contract claim should be dismissed because this proceeding contains a claim objection and Defendant's counterclaim is outside the scope of an objection.[353]   Plaintiffs also contend that this Court's order applied only certain adversary rules to this "contested matter," which did not include Federal Rule of Bankruptcy Procedure 7013, the rule governing counterclaims and cross-claims.[354]

It is true that this proceeding was born out of Plaintiffs' Objection to Defendant's Claim No. 9-2, since amended to 9-3.  It is also true that this Court upon Plaintiffs' request, ordered that certain adversary proceeding rules apply to Plaintiffs' Objection.[355]   However, when Plaintiffs filed their Complaint, incorporating their Objection, and alleged additional claims (including their own breach of contract claim) seeking the recovery of money, challenging the validity of Defendant's lien, and requesting an injunction, this proceeding became one under Rule 7001.[356]   Pursuant

---

[350] ECF No. 23 at 24–25, ¶¶ 9–11, 17–19.
[351] *Id.* at 24, ¶¶ 7, 12.
[352] *Id.* at 24–25, ¶¶ 13, 20.
[353] ECF No. 36 at 8, ¶ 31.
[354] *Id.* at 7–8, ¶¶ 29–31.
[355] ECF No. 1.
[356] *See* FED. R. BANKR. P. 3007(b), 7003; *see also In re Simmons*, 765 F.2d at 552 ("The objection to a claim initiates a contested matter unless the objection is joined with a counterclaim asking for the kind of relief specified in Bankruptcy Rule 7001.").

to Rule 7001, Part VII of the Federal Rules of Bankruptcy, which includes Rule 7013, applies to adversary proceedings.

Moreover, as stated in COLLIERS, "[s]hould a counterclaim be based on one of the kinds of suits described in Rule 7001, the counterclaim must be asserted in the manner of a complaint to which the creditor would be obliged to interpose an answer."[357]  Because Plaintiffs' Complaint brought claims fitting Rule 7001, Defendant was "obliged to interpose an answer."  Plus, this Court ordered Defendant to submit an answer to Plaintiffs' Complaint.[358]  Therefore, Defendant's Original Answer and Counterclaims[359] constitutes an answer,[360] wherein counterclaims are procedurally proper.

Lastly, Plaintiffs argue that Defendant's breach of contract counterclaim is not compulsory and arose pre-petition, so Defendant need not bring it now.  Regardless whether the claim is not compulsory or arose pre-petition, Rule 7013, incorporating FRCP 13, permits a party to bring a non-compulsory pre-petition counterclaim in a responsive pleading.[361]  Thus, Defendant's breach of contract counterclaim is procedurally proper as part of its answer.

### b.  Defendant's breach of contract claim is sufficiently pled

Plaintiffs move to dismiss Defendant's breach of contract claim arguing that Defendant did not sufficiently plead that Plaintiffs' alleged breaches were material.  Plaintiffs also argue Defendant's damages allegation that "[a]s a result of Plaintiffs' defaults, [Defendant] has suffered actual

---

[357] COLLIER ON BANKRUPTCY ¶ 502.02[3][b] (Richard Levin & Henry J. Sommer eds., 16th ed.); *see also In re Simmons*, 765 F.2d at 552.

[358] ECF No. 12.

[359] ECF No. 23.

[360] As stated *supra* in Part IV(A)(1)(a)(i), the portions of Plaintiffs' Complaint that incorporate Plaintiffs' Objection constitute an answer to Defendant's Claim No. 9-3.  However, the remainder of Plaintiffs' Complaint is just that, a complaint, to which Defendant must file an answer.

[361] *See* FED. R. CIV. P. 13 ("A pleading may state as a counterclaim against an opposing party any claim that is not compulsory."); *see also* FED. R. BANKR. P. 7013 ("Fed. R. Civ. P. applies in adversary proceedings except that a party sued by a trustee or debtor in possession need not state as a counterclaim any claim that the party has against the debtor, the debtor's property, or the estate, unless the claim arose after the entry of an order for relief.").

damages," is a purely conclusory statement.[362]   Under Texas law, the elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff because of the breach.[363]   Plaintiffs' contentions rest on the third and fourth elements.

Plaintiffs do not challenge the sufficiency of Defendant's allegations as to whether the Note or Deed of Trust were breached.  Instead, Plaintiffs argue that Defendant needed to allege that the breach was material.  However, the elements spelled out above contain no materiality requirement and Plaintiffs have not provided any legal authority for their contrary position.  Plaintiffs' Motion to Dismiss conflates the elements of a breach of contract claim and the elements of an excuse for non-performance under a contract.  The former contains no materiality requirement whereas the latter does.  Questions of materiality arise when a party claims to be excused from performing under a contract because of the other party's prior material breach.[364]   That was the exact issue raised in *Trevino*, erroneously cited by Plaintiffs in support of their argument.  In *Trevino*, this Court considered materiality solely to determine whether the plaintiffs there were precluded from bringing a breach of contract claim against the defendant where the defendant alleged that the plaintiffs also breached the contract.[365]   Nowhere did this Court say that materiality was a required element of the plaintiffs' breach of contract claim against the defendant.[366]

Moreover, to survive dismissal, Defendant must allege a "plausible, non-speculative claim for damages," but need not allege an exact dollar amount.[367]   Here, Defendant alleges that it

---

[362] ECF No. 36 at 6, ¶ 24 (citing ECF No. 23 at 4, ¶ 19).
[363] *Bridgmon v. Array Sys. Corp*., 325 F.3d 572, 577 (5th Cir. 2003).
[364] *Sky Capital Group, Ltd. v. Bombardier, Inc.*, 2014 Tex. App. LEXIS 12928, at *9 (Tex. App.—Dallas 2014, no pet.)
[365] *In re Trevino*, 535 B.R. at 155–56.
[366] *Id.*
[367] *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011) (finding that simply pleading that the plaintiff lost business and profits due to the defendant's actions was sufficient in pleading damages); *see also Casares v. Agri-Placements Int'l, Inc.*, 12 F. Supp. 3d 956, 978 (S.D. Tex. Mar. 31, 2014) (collecting cases).

suffered actual damages because of Plaintiffs' failure to make timely payments, maintain insurance, and maintain the Property in a good and safe condition of repair.[368]  Defendant also alleges that Plaintiffs have accrued $33,607.60 in arrearages.[369]  Based on those allegations, it is plausible that Plaintiffs' alleged breaches caused actual damage to Defendant.

Accordingly, Plaintiffs' Motion to Dismiss Defendant's Counterclaim I is denied.

## 2.  Defendant's Counterclaim II (declaratory judgment)

Defendant's Counterclaim II requests a judgment from this Court declaring that Defendant has a right to seek nonjudicial foreclosure against the Property.[370]  Plaintiffs move to dismiss Defendant's Count II, arguing that Defendant has not pled facts from which this Court can plausibly determine that Defendant has cause for relief from the automatic stay, including either a lack of adequate protection or that Plaintiffs have no equity in the Property and the Property is not necessary for effective reorganization.[371]  In response, Defendant cites *Campbell* for the proposition that the "automatic stay serves to protect the bankruptcy estate from actions taken by creditors outside the bankruptcy court forum, not legal actions taken within the bankruptcy court."[372]  Subsequent to *Campbell*, the Fifth Circuit in *Cowin* explained that "[w]hile the language in *Campbell* could suggest a broad rule, the holding was narrow: the automatic stay does not bar the filing of proofs of claim in the debtor's bankruptcy case."[373]

Defendant has not pointed this Court to any authority that extends the language in *Campbell* to an adversary proceeding wherein a creditor seeks a declaratory judgment for nonjudicial foreclosure.  Pursuant to § 362(a), the automatic stay applies to any "judicial . . . action or

---

[368] ECF No. 23 at 25.
[369] *Id.* at 24–25, ¶¶ 13, 20.
[370] *Id.* at 26, ¶ 22(g).
[371] *Id.* at 9–10, ¶ 36.
[372] ECF No. 40 at 8 (quoting *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 356 (5th Cir. 2008)).
[373] *Cowin v. Countrywide Home Loans, Inc. (In re Cowin)*, 864 F.3d 344, 352 (5th Cir. 2017).

proceeding against the debtor."[374]   The Fifth Circuit in *Campbell* noted that several courts had

found that the automatic stay does not bar actions that are expressly allowed under the Bankruptcy

Code, such as filing a proof of claim.[375]   Nonjudicial foreclosure is not expressly allowed under

the Bankruptcy Code.  Absent any legal authority to the contrary, Defendant must plead that relief

from the automatic stay is warranted under § 362(d)(1) or (2).  Defendant has not done so.  Any

motion for relief from the automatic stay must be filed in the main bankruptcy case pursuant to

Federal Rule of Bankruptcy Procedure 4001 and Bankruptcy Local Rule 4001-1.

       Accordingly, Defendant's Counterclaim II is dismissed.

       Defendant's Response states, "to the extent the Court determines Plaintiffs should be enti-

tled to any relief . . . [Defendant] respectfully requests the opportunity to amend its pleadings to

cure any deficiencies."[376]   Although the Federal Rules of Civil Procedure contain liberal amend-

ment rules, the party requesting amendment must at least "set forth with particularity the grounds

for the amendment and the relief sought."[377]   As observed by the Fifth Circuit in *Dow Chemical*,

"a bare request in an opposition to a motion to dismiss - without any indication of the particular

grounds on which the amendment is sought, *cf.* Fed. R. Civ. P. 7(b) - does not constitute a motion

within the contemplation of Rule 15(a)."[378]

       In *Dow Chemical*, the plaintiff filed a motion to amend consisting of three sentences, un-

supported by affidavits, a brief, or a proposed amended complaint.[379]   The plaintiff's motion stated,

"in the event that the dismissal is denied, plaintiff requests leave of Court to file amended pleadings

adding additional plaintiffs and facts as allowed by law."[380]   The Court found that while, in the

---

[374] 11 U.S.C. § 362(a).
[375] 545 F.3d at 356–57.
[376] ECF No. 40 at 12.
[377] *United States ex. Rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 331 (5th Cir. 2003).
[378] *Id.* (internal quotation marks and citations omitted).
[379] *Id.*
[380] *Id.*

loosest sense, the motion was a request to amend, it offered no grounds on which amendment should be permitted.[381]  "The absence of any proposed amendments, compounded by the lack of grounds for such an amendment," the Court concluded, "justifies the district court's implicit denial of [the plaintiff's] motion to amend his complaint."[382]  Defendant's Response here, just as the plaintiff's motion in *Dow Chemical*, contains no grounds for permitting amendment and no proposed amendment.  Defendant fails to even mention the Federal Rule of Civil Procedure that would permit it to amend its Answer.  Defendant merely requests to amend "to cure any deficiencies" and notes that the amendment is not intended "for the purposes of delay."[383]

Moreover, a court may deny leave to amend where an amendment would be futile.[384]  An amendment is futile if the amended claim could not survive a motion to dismiss.[385]  Here, a motion for relief from the automatic stay must be filed in the main bankruptcy case pursuant to Federal Rule of Bankruptcy Procedure 4001 and Bankruptcy Local Rule 4001-1.  Thus, any amendment to Defendant's Answer in this adversary proceeding seeking relief from the automatic stay in the underlying bankruptcy case would not survive a motion to dismiss.

Accordingly, Defendant's request to amend its answer and counterclaims is denied.

## C.  Plaintiffs' Motion for Judgment on the Pleadings

Plaintiffs also seek judgment on the pleadings as to Defendant's Counterclaims I and II.  Plaintiffs assert that Count I should be dismissed pursuant to FRCP 12(c) because Defendant has not shown that it is the holder of the Note and Deed of Trust.[386]  Plaintiffs assert that Count II

---

[381] *Id.*
[382] *Id.*
[383] ECF No. 40 at 12.
[384] *In re Hollie*, 622 B.R. at 235 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).
[385] *Id.* (quotation marks omitted) (quoting *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010)).
[386] *Id.* at 3, ¶ 6.

should likewise be dismissed because (a) Defendant has not obtained stay relief and (b) Defendant has not shown that it is the holder of the Note and Deed of Trust.[387]

FRCP 12(c), incorporated by Federal Rule of Bankruptcy Procedure 7012, provides, "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." An FRCP 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."[388] In determining whether Plaintiffs' FRCP 12(c) motion should be granted, this Court must view all well-pleaded facts as true and in the light most favorable to Defendant as non-movant.[389] Conclusory allegations will not be accepted.[390] Defendant's Counterclaims I and II will not be dismissed unless Defendant would not be entitled to relief under any set of facts or any possible theory that it could prove consistent with the allegations in its Answer.[391]

## 1. Defendant's Counterclaim I (breach of contract)

Plaintiffs move to dismiss Defendant's breach of contract claim on the ground that Defendant cannot enforce the Note and Deed of Trust against Plaintiffs because the pleadings do not show that Defendant is the legal holder of those documents.[392] Defendant responds that its Motion to Dismiss seeks to dismiss Plaintiffs' challenge to the lien on *res judicata* and judicial estoppel grounds and the 2010 Modification Agreement entered into by Defendant and Plaintiffs.

Plaintiffs' argument fails for several reasons. First, this Court already held that Plaintiffs are barred from challenging the validity of Defendant's lien for lack of standing and on *res judicata*

---

[387] *Id*. at 3, ¶ 5.
[388] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)).
[389] *Id.* at 312–13.
[390] *Id.* at 313.
[391] *Id.* (citing *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).
[392] ECF No. 36 at 12, ¶ 44.

grounds.  Second, the assignments of the Note and Deed of Trust are facially valid, transferring

interest in them to Defendant.  The assignments reflect that the Note and Deed of Trust were first

assigned by InterBay Funding, LLC, to Wachovia Bank, N.A. as Indenture Trustee (Bayview),[393]

and then from Wachovia Bank, N.A. as Trustee (Bayview) by Its Attorney-in-Fact Bayview Loan

Servicing, LLC, to Bayview Loan Servicing, LLC,[394] now known as Community, Defendant in

this case.  Third, Plaintiffs attached the 2010 Modification Agreement to their Complaint.[395]  That

agreement is between Defendant and Plaintiff Ramon Blanco as borrower and indicates that De-

fendant is the holder or the servicing agent of the holder of the Note executed by the borrower in

2001 in the amount of $68,000.[396]  It also says that "the note evidences a loan . . . along with a

Deed of Trust or Mortgage ("Security Instrument") securing said Note."[397]  The Modification

Agreement reflects that Defendant is the holder of the Note and Deed of Trust.

Additionally, in a footnote, Plaintiffs ask this Court to dismiss Defendant's breach of con-

tract claim because "even if the Court finds that Defendant holds good title to the Note and Deed

of Trust, the pleadings show that Defendant committed a prior material breach, and therefore can-

not prevail on its breach of contract counterclaim."[398]  Generally, a party in breach of contract

cannot maintain a suit for breach against another contracting party.[399]  If Defendant committed a

material breach of the Note or Deed of Trust, then Plaintiffs were excused from any obligation to

perform.[400]  However, when one party breaches a contract, the other party is entitled to terminate

---

[393] ECF No. 21-5.
[394] ECF No. 21-7.
[395] ECF No. 21-6.
[396] *Id.* at 1.
[397] *Id.*
[398] ECF No. 36 at 12 n.4.
[399] *In re Trevino*, 535 B.R. at 155 (citations omitted); *see also* Romero *v. Ocwen Loan Serv., LLC*, 2018 U.S. Dist. LEXIS 218820, at *25–26 (quoting *Peters v. JP Morgan Chase Bank, N.A.*, 600 F. App'x 220, 224 (5th Cir. 2015)).
[400] *In re Trevino*, 535 B.R. at 155.

the contract and sue for breach, "[b]ut a party who elects to treat a contract as continuing deprives himself of any excuse for ceasing performance on his own part."[401]

Plaintiffs' Complaint alleges that Defendant committed a prior material breach of the Note and Deed of Trust by violating Rule 3002.1 three times between 2013 and 2015 and misapplying payments in violation of sections 2.1 and 2.4 of the Deed of Trust and the payment provisions of the Note.[402]  But, as pointed out in Plaintiffs' Complaint and Defendant's Answer, Plaintiffs voluntarily stopped making payments under the Note in November 2018, years after Defendant allegedly breached the Note and Deed of Trust.[403]  Thus, it is plausible that Plaintiffs deprived themselves of any excuse for ceasing to make payments by continuing to perform under the Note and Deed of Trust for several years after Defendant's alleged breach.  Therefore, this Court cannot conclude that there is no set of facts or any possible theory that Defendant could prove consistent with the allegations in its answer that would entitle it to relief for breach of contract.

Accordingly, Plaintiffs' FRCP 12(c) motion to dismiss Defendant's Counterclaim I is denied.

### 2.  Defendant's Counterclaim II (declaratory judgment)

Plaintiffs move under FRCP 12(c) to dismiss Defendant's Counterclaim II on two grounds: (1) that Defendant has not alleged facts showing that it is entitled to relief from the automatic stay and (2) that Defendant has not sufficiently pled that it is the holder of the Note and Deed of Trust. For the reasons explained above, Plaintiffs' request for dismissal of Defendant's Counterclaim II on the ground that Defendant is not the legal holder of the Note and Deed of Trust is denied.

---

[401] *Long Trusts v. Griffin*, 222 S.W.3d 412, 415 (Tex. 2006). (cleaned up) (quoting *Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708 (Tex. 1982)).
[402] ECF No. 21 at 17–18, 34–35, ¶¶ 81, 170–71.
[403] *Id.* 15–16, ¶ 21; ECF No. 23 at 24, ¶ 9.

Furthermore, this Court has already found that Defendant's request for declaratory judgment is dismissed under FRCP 12(b)(6).

Accordingly, Plaintiffs' FRCP 12(c) motion to dismiss Defendant's Counterclaim II is denied as moot.  Defendant's Count II is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) as stated *supra*.

## V.  CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED September 14, 2021

Eduardo Rodriguez
United States Bankruptcy Judge